**David A. McNEAL, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SC 92615.**

Supreme Court of Missouri,
En Banc.

Nov. 12, 2013.

Andrew E. Zleit, Public Defender's Office, St. Louis, for Appellant.

Shaun J. Mackelprang, Attorney General's Office, Jefferson City, for Respondent.

RICHARD B. TEITELMAN, Judge.

David A. McNeal was convicted of one count of burglary in the second degree, section 569.170, and one count of stealing, section 570.030.[1] McNeal filed a Rule 29.15 motion for post-conviction relief alleging that counsel was ineffective for failing to request a jury instruction on the lesser-included offense of trespassing. The motion court overruled McNeal's motion without holding an evidentiary hearing. The judgment is reversed, and the case is remanded.[2]

## I.  Facts

In May 2008, two men were installing floors at apartment 510 in the Riverbend Apartment complex in St. Louis. At the same time, McNeal was visiting his son's mother, who lived next door in apartment 511. McNeal went to apartment 510 to collect $10 allegedly owed to him by a woman named Tracy. McNeal was acquainted with Tracy and had visited her in her apartment on previous occasions. As McNeal approached apartment 510, he saw two men leave the apartment. McNeal believed that the two men had visited Tra-cy, so he approached them to ask if Tracy was busy. It is not clear what was said, but McNeal went back to Tracy's apartment and knocked on the door. No one answered the door, but McNeal heard the sound of a radio in the apartment. McNeal opened the door and observed that the apartment was empty. At trial, McNeal testified that he was "in shock" that the apartment was empty and that he "didn't have any idea that the lady had moved and so I'm standing there." McNeal testified that, once inside the apartment, he saw a drill and decided to take it. McNeal admitted stealing the drill but denied that he entered the apartment with the intent to steal.

McNeal's counsel argued that McNeal did not enter the apartment "with the intent when he went in there." Counsel also questioned a police officer if McNeal's conduct, although charged as a burglary, could constitute a trespass. Although the issue of trespass was raised, counsel did not request a trespass instruction. During deliberations, the jury submitted a question to the judge asking if a burglary conviction can be based on "intent to commit the crime after he opens the door" or whether "it must occur prior to opening/touching the door?" The jury convicted McNeal of stealing and burglary. The convictions were affirmed on direct appeal. *State v. McNeal*, 292 S.W.3d 609 (Mo.App. 2009).

McNeal filed a Rule 29.15 motion for post-conviction relief alleging that trial counsel was ineffective for failing to request a trespassing instruction as a lesser-included offense of burglary. McNeal al-

---

1. All statutory references are to RSMo 2000.

2. The issue in this case is simply whether, in this particular case, McNeal's claims are clearly refuted by the record. This opinion holds only that McNeal's clams are not clearly refuted by the record and, therefore, that he is entitled to an evidentiary hearing to ascertain the ultimate merits of his claims.

leged that the trial court would have been required to give a trespass instruction because the evidence supported the instruction. He also alleged that he was prejudiced by counsel's failure because there was a reasonable probability that the jury would have convicted him of trespassing instead of burglary.

The motion court overruled McNeal's claim without an evidentiary hearing. The court concluded that counsel may have had a reasonable trial strategy for not submitting a trespass instruction. The court then cited *State v. Hinsa*, 976 S.W.2d 69, 73 (Mo.App.1998), for the proposition that when one enters a building and commits a crime, "there is no ambiguity in his purpose for entering, hence there is no basis for submitting trespass in the first degree." The court reasoned that McNeal was not entitled to a trespass instruction because:

> Once the door was opened and it was apparent the apartment was empty there could have been no purpose at that point for [McNeal] to enter the apartment. [McNeal's] defense was that he did not enter the apartment unlawfully because he thought Tracy lived there and he was in shock when he found the apartment vacant. This defense, if believed, would preclude a finding that he was guilty of trespass in the first degree, that he knowingly entered the apartment unlawfully. Unlawfully entering an apartment that clearly was no longer occupied by Tracy could reasonably only have been for the purpose of committing a crime therein.

The court concluded that, even if counsel had submitted a trespass instruction, McNeal would not have been entitled to the instruction. McNeal appeals.

## II. Standard of Review

■ A motion court's judgment will be reversed only if the findings of fact or conclusions of law are clearly erroneous. Rule 29.15(k). A judgment is clearly erroneous when an appellate court is left with a "definite and firm impression that a mistake has been made." *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009).

## III. Ineffective Assistance of Counsel

■ McNeal is entitled to an evidentiary hearing only if: (1) he pleaded facts, not conclusions, warranting relief; (2) the facts alleged are not refuted by the record; and (3) the matters complained of resulted in prejudice to the movant. *Webb v. State*, 334 S.W.3d 126, 128 (Mo. banc 2011). Therefore, to obtain an evidentiary hearing on his claims of ineffective assistance of trial counsel for failure to request instructions on a lesser-included offense, McNeal must plead facts, not refuted by the record, showing "that the decision not to request the instruction was not reasonable trial strategy." *Hendrix v. State*, 369 S.W.3d 93, 100 (Mo.App.2012) (quoting *Oplinger v. State*, 350 S.W.3d 474, 477 (Mo.App.2011)). McNeal also must plead facts showing that he was prejudiced by counsel's failure to request the trespass instruction. In this context, "prejudice" means a reasonable probability that the outcome of the trial would have been different if the trespass instruction had been given. *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006). A reasonable probability exists when there is " 'a probability sufficient to undermine confidence in the outcome.' " *Id.* at 33–34 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

## IV. Deficient Performance

■ McNeal alleged that counsel failed to request a trespass instruction and that this failure was not justified by any "strategy or reason, other than inadver-

tence...." Although there is a presumption that trial counsel's performance is sufficient, McNeal's claim that trial counsel lacked a reasonable strategy for not requesting an instruction on the lesser-included offense of trespassing is not clearly refuted by the record.

■ Trespass in the first degree is a lesser-included offense of burglary in the second degree. *State v. Yacub,* 976 S.W.2d 452, 453 (Mo. banc 1998) (citing *State v. Blewett,* 853 S.W.2d 455, 459 (Mo. App.1993)). "A person commits the crime of trespass in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property." Section 569.140. Second-degree burglary requires the additional element that a person unlawfully entered a building with the purpose of committing a crime therein. Section 569.170.

■ "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." *State v. Avery,* 120 S.W.3d 196, 200 (Mo. banc 2003). Therefore, "[i]f the evidence supports differing conclusions, the judge must instruct on each." *State v. Pond,* 131 S.W.3d 792, 794 (Mo. banc 2004). Doubt as to whether to instruct on the lesser-included offense is resolved in favor of giving the lesser-included offense instruction. *Yacub,* 976 S.W.2d at 453.

McNeal testified at trial that he opened the apartment door and was "in shock" to discover that the apartment was empty because he "had no idea that the lady had moved and so I'm standing there." McNeal testified that once he entered the apartment he noticed the drill and then decided to steal it. Additionally, the property manager for Riverbend Apartments testified that McNeal did not have permission to be in the apartment. The testimony from McNeal and the property manager provided a basis for the jury to conclude that McNeal did not enter the apartment with the intent to commit a crime and, instead, committed a trespass by unlawfully entering the apartment and then decided to commit a crime.

The motion court relied on *Hinsa* to support the conclusion that the only reasonable conclusion to draw from the evidence is that McNeal entered the apartment with the intent to commit a crime. *Hinsa,* however, is factually distinguishable. The defendant in *Hinsa* stopped his car at an unoccupied house at 3 a.m. for the purported reason of using the restroom. 976 S.W.2d at 70. The homeowner testified that he "maintain[ed] utilities" and "[e]verything was locked." *Id.* at 70. The defendant entered the home and, even though the lights worked, chose to walk through the house with the aid of his flashlight while stealing several items. *Id.* at 71. This fact was important, because "it is inferable that [the defendant] did not turn on the lights in the house because he wanted to conceal his presence." *Id.* at 73. Further, a police officer testified that he "observed several dresser drawers, chest of drawers pulled out" and that "[s]everal things looked like it had been ransacked." *Id.* at 70. Finally, the defendant admitted taking "a few tables" from the back porch of the home. *Id.* at 73. The evidence in *Hinsa* showed that the defendant likely forcibly entered into an unoccupied, locked home at 3 a.m., searched through the home with a flashlight, moved furniture from the back porch, placed several items in his pockets, and proceeded to "ransack" various areas of the home. It was under these circumstances that the court of appeals concluded that there was "no ambiguity in [the defendant's] purpose for entering" the home. *Id.* at 73.

In contrast to *Hinsa*, the evidence in this case demonstrates ambiguity in McNeal's purpose in entering apartment 510. Unlike the defendant in *Hinsa*, McNeal did not enter a locked residence in the middle of the night or search through the premises with a flashlight in an effort to conceal his presence. Instead, there was evidence that McNeal had visited Tracy in her apartment on prior occasions, believed she still lived there and knocked on the unlocked door before entering the apartment. McNeal's testimony demonstrates a trespass but is ambiguous with respect to whether he committed a burglary by entering with the intent to steal. Unlike in *Hinsa*, the evidence in this case provides a reasonable basis for a jury to conclude that McNeal committed a trespass because he unlawfully entered the apartment but did not do so with the intent of committing a crime. A trespass instruction would have been consistent with the evidence and with counsel's argument.[3] Counsel did not argue that McNeal had committed no crime. Instead, counsel raised the possibility that McNeal may have committed a trespass by entering the apartment but then failed to request an instruction on that theory. "In such all-or-nothing situations, '[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.'" *Breakiron v. Horn*, 642 F.3d 126, 138 (3rd Cir.2011), quoting *Beck v. Alabama*, 447 U.S. 625, 634, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). The record

shows that McNeal's counsel effectively conceded trespass but then failed to request a trespass instruction. Under these particular circumstances, the record does not clearly refute McNeal's claim that counsel lacked an objectively reasonable strategic reason for doing so.

## V. Prejudice

■ Having determined that McNeal pleaded facts supporting a finding that counsel's performance was deficient, the dispositive issue is whether McNeal was prejudiced by counsel's failure to request the instruction. The state argues that, as a matter of law, McNeal cannot establish prejudice because the jury found beyond a reasonable doubt that he committed a burglary by unlawfully entering the apartment with the intent to commit a crime. According to the state, the fact that the jury found McNeal guilty of burglary necessarily forecloses the possibility that the jury instead would have found him guilty of the lesser-included offense of trespassing.

There is Missouri case law supporting the state's argument. In *Hendrix*, the defendant was convicted of first-degree assault and armed criminal action. 369 S.W.3d at 96. In his post-conviction motion, he asserted that counsel was ineffective for failing to request an instruction on the lesser-included offenses of second-degree assault and third-degree assault. *Id.* at 99. The motion court held an evidentiary hearing and denied the claim. The court of appeals affirmed the judgment,

---

**3.** This fact, plus the lack of an evidentiary hearing in this case, distinguishes *Love v. State*, 670 S.W.2d 499 (Mo. banc 1984). In *Love*, the movant was convicted of two counts of second-degree murder and alleged that counsel was ineffective for failing to request a lesser-included offense instruction on manslaughter. *Id.* at 500–501. At the evidentiary hearing on the movant's claim of ineffective

assistance, counsel testified that a lesser-included offense instruction would have been inconsistent with the movant's testimony that he was totally innocent of the killings. *Id.* at 501. Given that McNeal effectively admitted that he committed a trespass, there would be no inconsistency between the instructions and the movant's testimony as was the case in *Love*.

holding that the movant could not establish prejudice because " '[i]n making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on the grounds of evidentiary insufficiency, that the . . . jury acted according to law.' " *Id.* at 100, quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The court concluded that, "under the *Strickland* decision, we must find that the jury followed the law in reaching its decision to find Hendrix guilty of assault in the first degree. Thus, no prejudice can be established." *Id.* at 100.

The assumption underlying the state's argument here and the holding in *Hendrix* is that it is illogical to conclude that the jury's deliberative process would be impacted in any way if a lesser-included offense instruction were provided. This assumption is incorrect.

A defendant is entitled to a jury instruction on a lesser-included offense when the evidence, viewed in the light most favorable to the defendant, establishes a basis for that instruction. *State v. Johnson*, 284 S.W.3d 561, 575 (Mo. banc 2009). An instruction on a lesser-included offense is required when the evidence provides a basis for both acquittal of the greater offense and conviction of the lesser-included offense. *Id.* Therefore, if the trial court declines to submit a lesser-included offense that is supported by the evidence in the case, Missouri law provides that this constitutes reversible error. *See State v. Williams*, 313 S.W.3d 656, 660 (Mo. banc 2010) (reversing a conviction for second-degree robbery because the "trial court erred in not submitting the [lesser-included] stealing instruction to the jury."). The fact that the failure to submit a lesser-included offense instruction constitutes reversible error is significant because appellate review of preserved error is "for prej-

udice, not mere error, and [it] will reverse only if the error is so prejudicial that it deprived the defendant of a fair trial." *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002).

Although *Johnson, Williams* and similar cases involve direct appeals and not claims of ineffective assistance of counsel, the underlying rationale is that the failure to provide the jury with the option of a lesser-included offense deprives the defendant of a fair trial, even if the jury ultimately convicts the defendant of the greater offense. Without a trespass instruction, the jury was left with only two choices: conviction of burglary or acquittal. When "one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." *Breakiron* at 126, quoting *Beck*, 447 U.S. at 634, 100 S.Ct. 2382. Even though juries are obligated "as a theoretical matter" to acquit a defendant if they do not find every element of the offense beyond a reasonable doubt, there is a "substantial risk that the jury's practice will diverge from theory" when it is not presented with the option of convicting of a lesser offense instead of acquittal. *Id.*, quoting *Keeble v. United States,* 412 U.S. 205, 213, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). Therefore, under the facts of this case, the jury's decision to convict on a greater offense does not foreclose all possibility that the jury would have convicted the defendant of the lesser offense. The jury's decision may make it difficult for a post-conviction movant to prove prejudice, but it does not necessarily preclude a finding of prejudice as a matter of law such that a movant, like McNeal, never can obtain an evidentiary hearing.

The foregoing analysis is consistent with *Patterson v. State*, 110 S.W.3d 896 (Mo. App.2003), in which the court recognized

that counsel can be ineffective for failing to request the instructional options supported by the evidence. In *Patterson*, a defendant convicted of second-degree robbery argued that his trial counsel was ineffective for failing to properly request an instruction for the lesser-included offense of stealing. *Id.* at 903. The court concluded that the evidence "was certainly sufficient" to support the conviction for robbery in the second-degree, "[y]et, the record in this case also would have allowed a juror to reasonably find" for a lesser-included offense not offered. *Id.* at 905. The court reversed the conviction and sentence and remanded for a new trial because the evidence of guilt was not overwhelming and "there is a reasonable probability that the results of the proceedings would have been different if trial counsel had submitted a properly drafted lesser-included offense instruction." *Id.* at 906–907.

*Patterson* is distinguishable from McNeal's case because defense counsel in *Patterson* attempted to submit a lesser-included offense instruction. However, this distinction is relevant to the performance aspect of the *Strickland* analysis and not the prejudice aspect. With respect to prejudice, *Patterson* clearly holds that, although the defendant was convicted of the greater offense, the defendant still was prejudiced by counsel's failure to request an instruction on the lesser-included offense. Similarly, McNeal has alleged facts, not clearly refuted by the record, showing he was prejudiced by counsel's failure to submit a lesser-included offense instruction. McNeal is entitled to an evidentiary hearing on his claims.

The judgment is reversed, and the case is remanded.

RUSSELL, C.J., BRECKENRIDGE and STITH, JJ., and SHEFFIELD, Sp.J., concur; WILSON, J., dissents in separate opinion filed; FISCHER, J., concurs in opinion of WILSON, J. DRAPER, J., not participating.

PAUL C. WILSON, Judge, dissenting.

The majority opinion holds that David McNeal is entitled to post-conviction relief if, at an evidentiary hearing, he can establish that his trial counsel's decision not to request a lesser-included offense instruction was unreasonable. However, even if that decision was unreasonable, the fact that the jury convicted McNeal of burglary (i.e., the greater offense) demonstrates conclusively that he was not prejudiced by his counsel's failure to request an instruction on trespass (i.e., the lesser-included offense). *Strickland* prohibits this Court from assuming that the jury failed to follow the law in the first trial or from hypothesizing that it might not follow the law in a second trial. Accordingly, I respectfully dissent.

In addition, this Court denied relief on precisely this same claim in *Love v. State*, 670 S.W.2d 499, 501–02 (Mo. banc 1984). There, this Court held that defense counsel's subjective reasons for failing to request a lesser-included offense instruction were irrelevant and that the decision was an objectively reasonable exercise of trial strategy. Here, no remand is necessary because this Court can—and should—follow *Love* and hold that defense counsel's decision was objectively reasonable. For this separate and independent reason, therefore, I also respectfully dissent and would affirm the motion court.

## I. McNeal Suffered No Prejudice

As discussed below, there is no basis for concluding that McNeal's counsel was ineffective for failing to request a lesser-included trespass instruction. In *Love*, 670 S.W.2d at 501–02, this Court not only rejected this same claim, it held that the subjective reasons for defense counsel's

decision were irrelevant because the reasonableness of defense counsel's decision must be evaluated objectively.

However, even if McNeal could show that his counsel's decision not to request a trespass instruction was objectively unreasonable, it would not matter. McNeal is not entitled to post-conviction relief because he cannot show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Ineffective assistance claims are an exception to the rule of finality that attaches when a conviction is upheld on direct appeal. Recognizing that such an exception easily could swallow this rule, *Strickland* emphasizes how critical the prejudice requirement is. "It is not enough for the defendant to show that the errors had some *conceivable* effect on the outcome of the proceeding.... [Instead,] the defendant must show that they *actually had an adverse effect* on the defense." *Id.* (emphasis added).

The majority opinion disregards this admonition and, instead, reaches a conclusion never before reached in this Court. On the issue of prejudice, the majority opinion states:

Although *Johnson, Williams* and similar cases [in which the trial court denied defendant's request for the lesser-included offense instruction] *involve direct appeals and not claims of ineffective assistance of counsel,* the un-

derlying rationale is that the failure to provide the jury with the option of a lesser-included offense deprives the defendant of a fair trial, even if the jury ultimately convicts the defendant of the greater offense.

Majority Opinion at 892 (emphasis added).

In other words, because the failure to give a lesser-included offense instruction when requested is reversible error on direct appeal, the majority opinion concludes that counsel's failure to request such an instruction also must be prejudicial for the purpose of a Rule 29.15 post-conviction motion. Leaving aside the damage this conclusion will do to the finality of convictions generally, the majority opinion fails to account for the fact that, on direct appeal, the *state* bears the burden of proving a *lack of prejudice* but, in a post-conviction proceeding, the *defendant* bears the burden of proving the *existence of prejudice. See State v. Miller,* 372 S.W.3d 455, 472 (Mo. banc 2012) (trial error "creates a rebuttable presumption of prejudice [and the] state may rebut this presumption by proving that the error was harmless beyond a reasonable doubt"). The only lesson to be drawn is that the party with the burden of proof on the issue of prejudice ordinarily loses, and should lose, in both instances.

Because prejudice is presumed on direct appeal, a new trial is required if the trial court refuses the defendant's properly requested lesser-included offense instruction. *See State v. Williams,* 313 S.W.3d 656, 660 (Mo. banc 2010) (trial court's failure to give requested lesser-included offense in-

---

1. To prevail on his ineffective assistance claim, McNeal must "satisfy the two-prong *Strickland* test: first, [he] must show that his attorney failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation

and, second, that trial counsel's failure prejudiced the defendant." *Strong v. State,* 263 S.W.3d 636, 642 (Mo. banc 2008) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

struction requires new trial); *State v. Pond*, 131 S.W.3d 792, 795 (Mo. banc 2004) (same). But this presumption applies only when the trial court commits error. If a defendant does not request a lesser-included offense instruction, there is no error and no prejudice. As a result, no new trial is necessary. *See State v. Dexter*, 954 S.W.2d 332, 344 (Mo. banc 1997) (on direct appeal, no "plain error" in failure to give lesser-included offense instruction that was not requested); *State v. Lee*, 654 S.W.2d 876, 879 (Mo. banc 1983) (same).

When the defendant does not request a lesser-included offense instruction at trial and later seeks post-conviction relief on the ground that trial counsel was constitutionally ineffective for failing to request such an instruction, the situation is the same as when a defendant tries to make the type of "plain error" claim that was rejected in both *Dexter* and *Lee*. There is no presumption of prejudice because there was no error. Instead, *Strickland* requires that the defendant must prove that counsel was ineffective *and* prove prejudice, i.e., that but for counsel's failure, the defendant would not have been convicted of the greater charge.

McNeal asserts such a claim, but the record clearly and unequivocally refutes it. If McNeal's counsel had requested a trespass instruction, that instruction (like all lesser-included instructions) would have begun with this language: *"If you do not find the defendant guilty of burglary* as submitted in Instruction No. \_\_\_, you must consider whether he is guilty of trespass in the first degree." [Emphasis added.] Thus, even if a trespass instruction had been given in McNeal's case, the jury never would have considered it because the jury found him guilty of burglary. *See State v. Madison*, 997 S.W.2d 16, 21 (Mo. banc 1999) (a jury is presumed to know and follow the instructions). Accordingly,

McNeal cannot show that "the result of the proceeding would have been different" as required under *Strickland*.

Because McNeal's jury found him guilty of burglary, thereby rendering a trespass instruction moot even if it had been requested, there are only two ways to conclude that this lesser-included offense instruction likely would have changed the outcome of McNeal's trial. They are:

(1) that the jury did not believe the evidence was sufficient to prove McNeal guilty of burglary beyond a reasonable doubt but, because it was placed in an all-or-nothing position by the absence of the trespass instruction, the jury *improperly convicted* McNeal despite its oath and the court's instructions, or

(2) that the jury did believe the evidence was sufficient to prove McNeal guilty of burglary beyond a reasonable doubt but, if it had been given the lesser-included offense instruction, the jury would have *improperly ignored* the evidence (as well as its oath) and convicted McNeal of the lesser offense as an act of leniency, grace, or other form of nullification.

*Strickland* prohibits this Court from engaging in *either* type of speculation. Instead, when the defendant seeks post-conviction relief, *Strickland* requires that:

... *a court should presume* ... *that the judge or jury acted according to law.* An assessment of the likelihood of a result more favorable to the defendant must *exclude* the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has *no entitlement* to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of *prejudice should proceed on the assumption* that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.

It should not depend on the idiosyncrasies of the particular decisionmaker, such as unusual propensities toward harshness or leniency.

*Strickland,* 466 U.S. at 694–95, 104 S.Ct. 2052 (emphasis added).

The majority opinion fails to presume that McNeal's "jury acted according to law," and its analysis of the issue of prejudice not only fails to "exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like," but the majority opinion openly relies on those possibilities. If *Strickland* is followed in this case; as it must be, there can be only one conclusion: Because the jury found McNeal guilty of burglary beyond a reasonable doubt, it never would have considered the lesser-included offense instruction even if it had been given. *Cf. State v. Johnston,* 957 S.W.2d 734, 751–52 (Mo. banc 1997) ("because the jury found Johnston guilty of the greater of the two instructed crimes, he could not have been prejudiced by the refusal to give an instruction on yet another lesser crime"). Accordingly, regardless of whether counsel's decision not to request a trespass instruction was reasonable or unreasonable, McNeal was not prejudiced by that decision and he is not entitled to relief under Rule 29.15.

## II.  No Evidentiary Hearing is Required

The majority opinion insists that the only issue decided in this case is whether McNeal is entitled to an evidentiary hearing to "ascertain the ultimate merits of his claims." Majority Op. at 888 n. 2. But the only conceivable reason to remand for an evidentiary hearing on the question of whether counsel was pursuing a trial strategy or simply failed to request the instruction is if one of the only two possible findings, i.e., strategy or inadvertence, merits relief. This is directly contrary to *Strickland* and *Love.*

Under *Strickland,* "counsel is **strongly presumed** to have rendered adequate assistance **and made all significant decisions** in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052 (emphasis added). Therefore, under *Strickland,* the decision by McNeal's counsel not to seek the trespass instruction is presumed to have been a matter of trial strategy.[2] This presumption of strategy is **in addition to,** and not merely a restatement of, the general presumption under *Strickland* that counsel is presumed adequate. *Id.*

Applying this presumption of trial strategy from *Strickland, Love* holds that the only question presented when a defendant claims counsel was ineffective for failing to request a lesser-included offense instruction "is whether a reasonably competent attorney would have performed differently under similar circumstances." *Love,* 670 S.W.2d at 502. Indeed, *Love* considers precisely the same claim that the majority opinion finds merits a hearing in this case (i.e., whether counsel's decision not to request the lesser-included offense instruction was a strategy or mistake), and holds that **it does not matter.** "[I]t is not important whether counsel's decision was simply a matter of strategy based upon a

---

**2.** Until now, this Court has applied this *Strickland* presumption faithfully. *See, e.g., State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998) ("[t]here is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment"); *State v.* *Simmons,* 955 S.W.2d 729, 746 (Mo. banc 1997) (movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment").

reasonable awareness of applicable law or whether it was the product of an uninformed notion that no alternative was available." *Id.*[3]

The majority opinion seeks to distinguish *Love* on the ground that an evidentiary hearing had been held before that case reached this Court. Whether the trial court in *Love* chose to hold a hearing is immaterial. What matters is that this Court in *Love* plainly held that no hearing was necessary because defense counsel's subjective reasons for not seeking the instruction are irrelevant. More importantly, the majority opinion's remand clouds the principal holding in *Love* that the only question presented by this type of claim is whether any reasonably competent attorney could have done what McNeal's counsel did. If the decision is not objectively reasonable, McNeal is entitled to relief *regardless* of what his counsel might say at an evidentiary hearing. By the same token, if a reasonably competent attorney in the same circumstances could have decided to forego the trespass instruction, McNeal's Rule 29.15 motion was properly denied.

Accordingly, the majority opinion's remand for a hearing in this case is both unnecessary and an unwarranted departure from this Court's precedent.

**III. The Decision to Forego the Trespass Instruction Was Objectively Reasonable**

The strategic choice of whether to forego a lesser-included instruction and put the state to its proof on the crime charged is an important aspect of a defendant's constitutional right to present a defense. This choice stands as an important check (in addition to the grand jury and preliminary hearing process) against a prosecutor believing there is no risk in charging a greater crime than the evidence likely supports because the jury always will be able to convict the defendant of a lesser-included offense. As a result, this Court steadfastly has protected a defendant's right to request—and the right not to request—a lesser-included offense instruction.

*[T]he defendant may determine whether he will give the jury an "all or nothing" choice, or request submission of lesser-included offense instructions. Once having made the determination, the defendant may be held to accept the consequences of that decision.* Due process considerations do not require that this Court employ a rule that encourages a defendant to refrain in every case from requesting submission of lesser included offense instruction, see the trial through to conclusion, then seek to convict the trial court of plain error after the jury returns a guilty verdict.

**3.** Even if defense counsel's subjective reasons are material, McNeal's Rule 29.15 motion failed to allege any specific facts to rebut the *Strickland* presumption that his counsel's failure to request the trespass instruction was a matter of trial strategy. For example, McNeal does not allege that he instructed counsel to request the instruction and was ignored. Nor does he allege that his counsel failed to discuss the issue with him or adequately disclose the ramifications of the decision. Instead, McNeal alleges only the *bare legal conclusion* that his counsel's failure to

request the instruction was the result of "neglect or inadvertence." Therefore, McNeal falls far short of the requirement in *Webb v. State,* 334 S.W.3d 126, 128 (Mo. banc 2011), that a post-conviction motion must plead facts—not conclusions—showing a right to post-conviction relief before a hearing can be granted. However, now that the majority opinion finds this bare assertion sufficient, hearings should be held in every case challenging defense counsel's trial strategy, thereby effectively eliminating the trial strategy presumption in *Strickland.*

*Dexter,* 954 S.W.2d at 344 (emphasis added).

Because of the importance of maintaining the availability of this strategic choice, *Dexter* holds that it is not "plain error" for the trial court not to give a lesser-included offense instruction when the defense did not request it. *Id. See also Lee,* 654 S.W.2d at 879 (finding no plain error because "defense counsel *frequently make a conscious decision not to request a lesser offense as a matter of trial strategy* [on the ground that] the jury may convict of the lesser offense, if submitted, rather than render a not guilty verdict on the higher offense if the lesser is not submitted") (emphasis added). If *Dexter* had allowed the defendant to pursue an "all-or-nothing" strategy throughout trial and then challenge that strategy after it proved unsuccessful, such a decision would have eliminated this strategic option for all future defendants because trial courts would have been forced to give lesser-included offense instructions regardless of whether the defendant requests it or risk having to retry the case.

To close this circle, *Love* decided in a post-conviction context essentially the same issue that the Court had decided in direct appeal cases such as *Dexter, Lee, Williams,* and *Pond.* The direct appeal decisions work together to protect defendants' right to choose whether to pursue an "all-or-nothing" strategy by: (a) granting a new trial when the defendant properly requests a lesser-included instruction and the trial court fails to give it (*see Williams* and *Pond*) but (b) denying a new trial on "plain error" grounds when the defendant does not request such an instruction (*see Dexter* and *Lee*). *Love* properly follows the reasoning of the latter cases and refuses to give the defendant a second bite at the strategic apple merely because the defendant claims that defense counsel was ineffective for failing to request a lesser-included instruction instead of claiming that the trial court committed "plain error" for failing to give an instruction the defendant did not request.

Placed in the same situation, *a reasonably competent attorney could have concluded that it was in the best interest of his client* to deny the jury the opportunity to compromise on some middle ground between second degree murder and acquittal. *An objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel.* Further, the reasonableness of employing an all-or-nothing strategy in a homicide prosecution is not affected by the failure of the jury to acquit. Obviously, then, movant's *counsel cannot be convicted of being ineffective for seeking to employ the best defense for his client by not offering the jury a middle ground for conviction....* An offer of [a lesser-included offense] instruction would be out of phase with trial strategy, which was that defendant was innocent of anything—not that the homicides were manslaughter.

*Love,* 670 S.W.2d at 502 (emphasis added and citations omitted).

Now, the majority opinion refuses to follow this Court's decision in *Love* on the ground that here, unlike in *Love,* the "trespass instruction would have been consistent with the evidence and with counsel's argument." Majority Op. at 891. *Strickland* and *Love* make clear that such appellate backseat driving is not permitted, however.

McNeal's trial boiled down to the question of what McNeal's intent was at the time he entered the vacant apartment. McNeal's sole defense was that he entered the apartment for the purpose of talking to "an acquaintance" named Tracy and not

for the purpose of finding something to steal. Obviously, if even one juror had believed McNeal's story, he would not have been convicted of burglary. Instead, by convicting him of burglary, the jury necessarily concluded that McNeal entered the apartment for the purpose of finding something to steal.

The majority opinion reasons that the evidence was sufficient to find that McNeal knowingly entered the apartment unlawfully without also having to find that he entered the vacant apartment with the intent to steal. But this always is true when considering a lesser-included offense. What the majority fails to see is that McNeal's entire defense was his claim that he entered the apartment *legally,* i.e., to see Tracy and to ask her for money, not that he entered the apartment illegally but without an intent to commit a crime.

The majority opinion notes that McNeal's testimony doomed his argument that he entered the apartment lawfully. This is correct. McNeal inadvertently contradicted his own theory in the following colloquy:

A: Okay. I went down to Tracy's apartment, knocked on her door, I heard a radio playing.... Well, I opened the door, "Tracy," but to my surprise it was empty.

Q: What do you mean empty?

A: She was moved. It wasn't nothing there....

Q: Okay, but when you went in there—when you went in there, why did you go in there?

A: I went in there looking for Tracy. I opened the door up, "Hey Tracy," but now I'm in shock. It's empty. I step in there and I look over and see the radio playing, you know, because it's a shock to me. I didn't have any idea the lady moved and so I'm standing there. And not to confuse the jurors, yes, I stole the

drill. I'm not denying that, but I didn't go over there burglarously to steal anything. I went looking for Tracy.

Read carefully, McNeal clearly admitted that he understood Tracy had moved out *before* he entered the apartment: "I'm in shock. It's empty. I step in[.]" As a result, the jury realized that McNeal's guilt turned on the question of whether the felonious intent necessary to convict him of burglary could arise *after* McNeal opened the door *but before* he entered the vacant apartment. No juridical mind reading is required to divine the jury's thoughts because, during its deliberations, the jury sent the following note to the court:

> For the purpose of Instruction No. 5 [regarding burglary] and the second point [regarding intent], can the intent to commit the crime occur *after he opens the door* for burglary? Must it occur prior to opening/touching the door?

[Emphasis added.]

The burglary instruction stated that McNeal's felonious intent only needed to be present when he "entered" the apartment, not when he opened the door. Accordingly, the trial court replied that the jury must be guided by the instructions. Because McNeal inadvertently confessed that his only lawful excuse for entering the apartment (i.e., to talk to Tracy) was gone before he crossed the threshold of the obviously vacant apartment, the evidence was sufficient to find that McNeal knowingly entered the apartment unlawfully. But, because the court of appeals already affirmed the sufficiency of the evidence to support McNeal's burglary conviction, *State v. McNeal,* 292 S.W.3d 609, 609 (Mo. App. E.D.2009), the evidence necessarily was sufficient to support the lesser-included offense of trespass. That is not the question.

The question is whether there is any basis for concluding that the significance of McNeal's inadvertent admission was as obvious to McNeal's counsel in the heat of the trial as it is to the majority opinion now. Remember, counsel did not have the luxury of time and a transcript to discover this inadvertent admission, nor did counsel have the benefit of knowing that the jury would send a note during deliberations emphasizing how significant the jury believed McNeal's admission was. Even if counsel should have appreciated the gravity of McNeal's admission and should have guessed that the jury would do so as well, there is no basis to conclude that McNeal's admission was so obvious and compelling that it made it unreasonable for counsel not to abandon McNeal's entire defense up to that point (i.e., that he was in the apartment lawfully to see Tracy about some money) and immediately pursue an entirely new—and contradictory—defense (i.e., that McNeal knew he was entering the apartment illegally but didn't form the intent to steal until after he was inside).

It is hardly unprecedented in the annals of criminal trials for a defendant inadvertently to poke a hole in his own defense. Nor is it unprecedented that McNeal's counsel decided to stick with McNeal's defense even though that defense might have been stronger before McNeal's testimony than it was after. Just because McNeal's defense theory was a leaky vessel, this did not necessarily mean that defense counsel was required to abandon ship. Whatever its shortcomings, McNeal's original theory had the virtue of presenting the jury with an innocent explanation (however flawed or inconsistent) for why McNeal went into the apartment. If McNeal's counsel had requested a trespass instruction, he would have been forced to admit what McNeal's testimony only suggested, i.e., that McNeal had no innocent reason for entering the apartment and, in fact, he knowingly entered the apartment unlawfully. A reasonable attorney might have concluded that, once he openly abandoned McNeal's only innocent explanation for being in the apartment, the jury would be more likely to believe that he entered for the purpose of finding something to steal (and convict him of burglary) than if he stuck to McNeal's version no matter how leaky or inconsistent it might be.

Accordingly, McNeal's counsel had an undeniably reasonable basis for sticking with McNeal's story and denying the jury an additional "middle ground" of trespass.[4] A lesser-included offense instruction would not have avoided the hole that McNeal dug for himself; it only would have made it

---

4. The strategy employed by McNeal's counsel was even more objectively reasonable because that *strategy never was the "all-or-nothing" approach* that typically arises in these cases. Even though a lesser-included offense instruction can give the jury a "middle ground," McNeal's counsel did not need to request one on that basis because the jury already had one. Here, because McNeal was charged with stealing, McNeal's counsel did not *need* the trespass instruction to argue that the jury should acquit him of burglary and convict him of something less serious. Not only *could* McNeal's counsel make such an argument, he *did* make it—and *without* having to volunteer McNeal for a felony trespass conviction: "Now ... obviously I think my client's not going to walk out of here without some kind of conviction, but you have two separate counts [of burglary and stealing].... I don't know if [the victim] will be satisfied or not, but if you decide based on the evidence you've seen and heard here, you'll find [McNeal] not guilty on [burglary] and you'll find him guilty on [stealing]." Accordingly, this is not—and never was—the sort of "all-or-nothing" situation that the majority opinion relies upon for its dire prediction that juries will ignore their oaths and instructions and convict defendants of crimes the state failed to prove rather than let a "plainly guilty" defendant go free. *See* Majority Op. at 892 (quoting *Breakiron v. Horn*, 642 F.3d 126, 138 (3rd Cir.2011)).

deeper. Accordingly, *Love* is directly on point, and I would affirm the motion court's judgment on that basis.[5]

## IV. Conclusion

I believe the majority opinion is motivated by the very best intentions and a sincere belief that a different trial strategy might have yielded a better result for McNeal. But the majority opinion's holding will put defense counsel and trial courts in an impossible situation going forward, and, ultimately, the price of its decision will be borne by all future defendants. From now on, a defense counsel who decides not to request a lesser-included offense instruction risks a post-conviction determination (and possible disciplinary sanctions) that this decision was objectively unreasonable and failed to meet the minimal standards of constitutional competence. Therefore, anytime counsel elects not to request such an instruction when the evidence would support it, counsel (at a minimum) should notify the trial court of the majority opinion in this case.

And what then is the trial court to do? Though *Dexter* and *Lee* hold that the trial court commits no error by refusing to give a lesser-included offense instruction that the defense does not request, the majority opinion here makes it clear that a defendant may be entitled to a second trial if counsel's "all-or-nothing" strategy fails at the first. On the other hand, the trial court knows that there is no reason (other than the encroachment on defendant's right to make key strategic decisions) not to give such an instruction *sua sponte* whenever it is supported by the evidence. Therefore, it seems likely that the trial

courts will give the lesser-included instruction, whether requested or not.

Naturally, this will deprive defendants of an important choice as to how they wish to fashion their own defenses; a choice that *Williams, Pond, Dexter, Lee* and *Love* all sought to protect. Thus, in the future, defendants who might have secured an acquittal using an "all-or-nothing" approach will be deprived of that option and, instead, will face convictions for lesser-included offenses that they otherwise might have preferred the jury never consider.

For the foregoing reasons, I respectfully dissent.

---

**5.** *Patterson v. State*, 110 S.W.3d 896 (Mo.App. W.D.2003), relied upon in the majority opinion, does not stand apart from *Love*. In *Patterson*, the record clearly refuted the *Strickland* presumption because defense counsel did request that the trial court give the lesser-included offense instruction. However, be-

cause of the incompetent manner in which the request was made, the instruction was not given. Accordingly, *Strickland's* trial strategy presumption was clearly refuted, *Love* did not control, and post-conviction relief was appropriate.