

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **CHRISTOPHER MICHAEL KING,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD84079** |
| | ) | |
| **v.** | ) | **OPINION FILED: January 11, 2022** |
| | ) | |
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Harrison County, Missouri**
The Honorable Thomas R. Alley, Judge

Before Divison Three: Lisa White Hardwick, Presiding Judge, Gary D. Witt, Judge,
Edward R. Ardini, Jr., Judge

Christopher Michael King ("King") appeals the judgment of the Circuit Court of

Harrison County, Missouri ("motion court"), denying, without an evidentiary hearing, his

motion for post-conviction relief pursuant to Rule 29.15. On appeal, King claims that the

motion court erred in: (1) denying, without an evidentiary hearing, King's claim that his

trial counsel was ineffective in failing to request a verdict directing instruction for the

lesser-included offense of attempted assault in the second degree, because there is a

reasonable probability that the jury would have convicted him on the lesser charge; (2)

denying, without an evidentiary hearing, King's claim that his trial counsel was ineffective in failing to object to the court's verdict directing instruction for attempted assault in the first degree under section 562.012; and (3) denying, without an evidentiary hearing, his claim that the sentencing court was under the mistaken impression that King would not have to serve 85 percent of his sentence. We affirm.

### Factual and Procedural Background[1]

In August 2017, M.T., an adult female, ended a nine-year, off-and-on romantic relationship with King. After ending the relationship, M.T. and her daughter moved from Cedar Rapids, Iowa, where they had been living with King, to her hometown of Cedar Falls, Iowa, approximately an hour away from Cedar Rapids.

A few weeks after their break-up, M.T. saw King's pick-up truck in Cedar Falls while she was dropping her daughter off at school. M.T. confronted King about following her. King agreed to go to a nearby McDonald's restaurant with M.T. so they could talk in a public place. King was upset that their relationship had ended. While at McDonald's, he confronted M.T. about her relationship with another man, who has since become M.T.'s husband ("Husband"). M.T. met Husband in college and had previously been in a romantic relationship with him. While talking to King, she denied she was in an ongoing relationship with Husband. King grabbed M.T.'s phone from her purse and looked through her text messages, confirming that M.T. had renewed her relationship with Husband. King then got into the driver's seat of M.T.'s car to prevent her from leaving. Eventually, King got

---

[1] Much of the factual background for King's underlying criminal case comes, without further attribution, from the unpublished per curiam order denying King's direct appeal.

out of M.T.'s car and exclaimed to her, "You're dead, you're all dead." M.T. was unable to make any calls because her phone password was not being recognized. Later that afternoon, M.T. reported this threat to the Cedar Falls police.

That weekend, M.T. convinced Husband, who lived in Mercer, Missouri, to stay with her in Cedar Falls at her parents' house, where she had been staying. While Husband regularly spent the weekend with M.T. in Cedar Falls, M.T. wanted him to come up that weekend in particular because of the incident earlier in the week with King. That Sunday, September 24, 2017, M.T. and the family returned home from church to find that several small items, including Husband's keys, had been moved, and a Rada-brand kitchen knife was missing. M.T. was also unable to log into her computer because her password had been changed. King later admitted that he had been in Cedar Falls at the time, and a forensic examination of King's phone revealed photographs taken on September 24 of a calendar on M.T.'s computer and a list of her passwords.

A few days later, on Tuesday, September 26, 2017, Husband returned to Mercer. He spent the night at a neighbor's house directly across the street from his own house because he was uncomfortable staying at his home given the situation with King and the suspicious circumstances at M.T.'s parents' home. When Husband went to his home to get supplies, accompanied by his neighbor, he observed that items in the room used by M.T.'s daughter appeared to be out of place. Husband set up a camcorder on a tripod at the neighbor's house to record the front door of his house. That night, the camera recorded King unscrewing the front porch light bulb on Husband's house. Husband also spent the following night at his neighbor's house.

3

On the morning of Thursday, September 28, 2017, Mercer County Deputy Sherriff Jimmy See ("Deputy See") responded to a local park after a silver Toyota Camry associated with King had been spotted in the park's parking lot. The vehicle was subject to a "be on the lookout" or "BOLO" alert. When Deputy See arrived at the park, he found the vehicle covered in heavy dew, but empty of occupants. Because Deputy See did not see anybody, he left the park and went to Husband's home, less than one block away. As he was pulling into Husband's driveway, a neighbor alerted him that the silver Camry was leaving the park. Deputy See initiated a traffic stop based on the BOLO alert and took King into custody. Deputy See observed that King's clothing was wet or saturated on his front side and that his shoes were wet.

In his home, Husband discovered additional items in disarray, a plastic bag on the floor under the bed where M.T.'s daughter slept when she stayed at the house, and a smiling face drawn in the dust on a speaker.

Deputy See found a screwdriver in King's front pocket and observed a brush axe or machete and a black handled knife lying in plain view in the vehicle. At King's request, Deputy See retrieved a Subway bag located in the back seat of the vehicle. Deputy See found that it contained approximately $10,000 cash, three savings bonds, and King's passport. King later admitted that he had purchased the Camry in Cedar Rapids. He claimed that he happened to be in Mercer merely because he was driving through Mercer County on his way back to Iowa after visiting St. Louis.

After Deputy See transported King to jail, he returned to the park to continue his investigation. Accompanied by Missouri State Highway Patrol Trooper Adam McAtee,

4

Deputy See searched the park and surrounding area. The officers followed a path from the park heading toward Husband's house, where Deputy See had earlier seen footprints in the dew, and continued on to a nearby pasture. Approximately one-and-a-half feet inside a fence separating the park and pasture, the officers found a knife stuck into the ground with two zip-ties next to a tree. At trial, M.T. identified the knife as the Rada knife that had been stolen from her parents' home in Cedar Falls a few days earlier.

While conducting an inventory search of the Camry, police found a newly purchased black apron, a new kitchen towel, a new shower liner, a black-handled knife, a hammer, and an open package of zip ties with two missing that matched the two zip ties found on the ground with the Rada knife. In the trunk of the vehicle, police found a laptop computer and two suitcases containing various items of clothing, a shaving kit, and King's high school diploma. A forensic examination of King's phone, conducted pursuant to a warrant, revealed that he had researched Husband's name, employment, and social media profile, and that he had looked up a map for the City of Mercer on Google Maps.

A second amended felony information charged King with: attempted first-degree assault under sections 565.050[2] and 562.012; second-degree burglary under section 569.170; and second-degree property damage under section 569.120. The case was tried to a jury on August 20, 2018. The jury was instructed on attempted first-degree assault, burglary in the second degree, the lesser-included offenses of first-degree and second-degree trespass, and property damage.

---

[2] All statutory references are to R.S.Mo. 2016, as updated by the operative supplement.

The jury found King guilty of attempted first-degree assault, and second-degree trespass. The jury acquitted King of the charge of property damage. King's trial counsel did not request a verdict-directing instruction on the lesser-included offense of attempted second-degree assault, arguing to the jury that "the most we got here is that there's basically harassment."

The trial court sentenced King to nine years' imprisonment on the assault offense and assessed a fine for the offense of trespass. King's convictions were affirmed on direct appeal in an unpublished per curiam order. *State v. King*, 591 S.W.3d 533 (Mo. App. W.D. 2020). King filed a timely motion for post-conviction relief pursuant to Rule 29.15, which was amended by appointed counsel, and the circuit court denied the amended motion without an evidentiary hearing. This appeal follows.

**Standard of Review**

Appellate review of a motion court's Rule 29.15 judgment "is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Price v. State*, 422 S.W.3d 292, 294 (Mo. banc 2014); Rule 29.15(k). "Findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake has been made." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000). "A reviewing court must uphold a motion court's judgment if it is sustainable on any ground." *Voss v. State*, 570 S.W.3d 184, 192 (Mo. App. E.D. 2019).

**Analysis**

*Point I; Lesser-included offense instruction*

King's first point on appeal is that the motion court clearly erred in denying his motion for post-conviction relief without an evidentiary hearing because his trial counsel was ineffective for failing to request the trial court to submit to the jury a verdict-directing instruction for the offense of attempted assault in the second degree, a lesser-included offense of attempted assault in the first degree. King is entitled to an evidentiary hearing only if: "(1) he pleaded facts, not conclusions, warranting relief; (2) the facts alleged are not refuted by the record; and (3) the matters complained of resulted in prejudice to the movant." *McNeal v. State*, 412 S.W.3d 886, 889 (Mo. banc 2013). "Therefore, to obtain an evidentiary hearing on his claims of ineffective trial counsel for failure to request instructions on a lesser-included offense, [King] must plead facts, not refuted by the record, showing that the decision not to request the instruction was not reasonable trial strategy." *Id*. (internal quotation omitted). King must also plead facts showing that he was prejudiced by counsel's failure to request the lesser-included offense instruction. *Id.* Prejudice means that, had the lesser-included instruction been given, "there is a reasonable probability that the outcome of the trial would have been different[.]" *Id.* (quoting *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)).

There is a presumption that trial counsel's performance was sufficient. *McNeal*, 412 S.W.3d at 890. Although "doubt as to whether to instruct on the lesser-included offense is resolved in favor of giving the lesser-included instruction," *id.*, it can also be an objectively reasonable strategy *not* to submit an available lesser-included instruction, especially when

7

the attorney concludes that it is in the best interest of his client "to deny the jury the opportunity to compromise on some middle ground" between the greater offense and acquittal. *Love v. State*, 670 S.W.2d 499, 502 (Mo. banc 1984). King's motion alleged that he:

> was entitled to submit the nested lesser-included offense of assault in the second degree. In failing to proffer an instruction on assault in the second degree trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances. This prejudiced movant because, if proffered, the trial court would have submitted the jury instruction on assault in the second degree[,] and there is a reasonable likelihood the jury would have found movant guilty of the lesser offense.

Noticeably absent from this part of King's motion is any factual allegation that counsel's failure to offer the instruction for the lesser-included offense was due to inadvertence or that it was not a matter of reasonable trial strategy, which is the presumption. The allegation in King's motion that "trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances" is a *legal* conclusion that simply parrots the *Strickland* performance standard; the motion does not make any *factual* allegations to support this legal conclusion. Had King alleged sufficient facts, the motion court may well have been required to hold an evidentiary hearing to determine whether counsel's course of action was, in fact, a matter of reasonable trial strategy. *See, e.g., Watson v. State*, 520 S.W.3d 423, 436-37 (Mo. banc 2017); *McNeal¸* 412 S.W.3d at 892-93. King's motion further failed to delineate any facts which would form a basis for the jury to have acquitted him on the charge of attempted assault in the first degree while finding him guilty of attempted assault

8

in the second degree. The facts recited in King's motion include: that he had made death threats against M.T. and Husband; that he was outside of Husband's home; that he had in his possession zip ties, knives, a machete, a shower curtain, an apron, towels, a hammer, a baseball bat, electrical tape, his passport, and $10,000 cash and savings bonds. None of this evidence supports an inference that King intended to merely cause Husband physical injury (assault in the second degree) rather than serious physical injury (assault in the first degree).[3]

The conclusion that the failure to request the lesser-included offense instruction to the charge of attempted first-degree assault was in fact trial counsel's strategy rather than inadvertence is supported by the record. Trial counsel's closing argument that the jury "must consider each and every piece of evidence in this case and you must be firmly convinced that the [Movant] is guilty of the offense charged, *not some other offense*" combined with his argument that "I think the most we got here is that there is basically harassment. That's not the charge[,]" is consistent with counsel's decision to pursue an "all or nothing" defense. "'All-or-nothing' defenses have been upheld as sound trial strategy." *Watson v. State*, 520 S.W.3d 423, 436 (Mo. banc 2017).

We cannot conclude that the motion court clearly erred by failing to hold an evidentiary hearing when King failed to allege any *facts* supporting his claim that trial

---

[3] King's appellate brief argues that King had told an officer that he merely wanted to "beat up" Husband, as opposed to killing him pursuant to his death threats, but that King was "too chicken." King contends that this fact supports giving an instruction for attempted assault in the second degree. However, these facts were not alleged or argued in Husband's amended Rule 29.15 motion.

9

counsel's decision not to request the instruction for the lesser-included offense was anything other than reasonable trial strategy.[4]  King's first point is denied.

*Point II; Attempt instructions*

King's second point on appeal argues that the motion court clearly erred in denying his motion without an evidentiary hearing because trial counsel was ineffective for failing to object to Instruction No. 5, which was the verdict-directing instruction under the general attempt statute, section 562.012, rather than the instruction for the specific statute for attempted assault in the first degree under section 565.050.[5]

Rule 28.02(c) requires that MAI-CR instructions or verdict forms applicable to the law "shall be given or used to the exclusion of any other verdict form."  Rule 28.02(f) provides that the giving of an instruction in violation of this rule constitutes error, and the error's prejudicial effect shall be determined by the court "provided that objection has been timely made pursuant to Rule 28.03."  Rule 28.03 requires counsel to make "specific objections to instructions or verdict forms considered erroneous… before the jury retires to consider its verdict…."  The State concedes that Instruction No. 5 "did not strictly comply with the approved instruction" for attempted assault in the first degree.  However,

---

[4] While King's brief relies almost entirely on the facts in *McNeal* and claims that they necessitate a hearing in his own case, we note that McNeal had "alleged that counsel failed to request [the lesser] instruction and that this failure was not justified by any strategy or reason other than inadvertence…" *McNeal*, 412 S.W.3d at 889-90.  King's own motion did not so allege, and it is much less clear that the evidence presented in this case could support a jury's conclusion that King only hoped to cause physical injury (the lesser-included offense) and not serious physical injury (the greater offense) to Husband.

[5] King's second point relied on states that his counsel was ineffective in "failing to apprise the court that he was convicted of the inchoate offense of attempted assault in the first degree under section 562.012.  The argument section of his brief, however, reveals that the essence of his complaint is that counsel failed to object to the manner in which the jury was instructed on the first-degree assault.  Arguments raised in the argument portion of the brief but not set forth in the point relied on are not preserved, and therefore waived. *Ziade v. Quality Business Solutions, Inc.,* 618 S.W.3d 537, 544 (Mo. App. W.D. 2021).

10

the State argues, trial counsel's failure to object to the instruction is not reversible because King fails to show that the error was prejudicial in that there is not a reasonable probability that, had counsel properly objected, the outcome of the trial would have been different. *See State v. Perry*, 548 S.W.3d 292, 301 (Mo. banc 2018).

The instruction as submitted by the state was based upon MAI-CR 4th 404.06 (2017) and, as given to the jury, read:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about September 28, 2017, in the State of Missouri, the defendant possessed zip ties, a bush knife, a shower curtain, towels, a passport, a large amount of cash, at least one suitcase filled with clothing, and monitored the home of [Husband], and
>
> Second, that such conduct was a substantial step toward the commission of the offense of assault in the first degree, and
>
> Third, that defendant engaged in such conduct for the purpose of committing such assault in the first degree against [Husband],
>
> then you will find the defendant guilty under Count I of an attempt to commit assault in the first degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant guilty of that offense.

The terms "assault in the first degree," "serious physical injury," and "attempted" were defined in separate instructions. Instruction No. 10 provided, "As used in this instruction, the term 'assault in the first degree' means an attempt to kill or knowingly cause or attempting to cause serious physical injury to another person." Instruction No. 11 provided, "As used in this instruction, the term 'serious physical injury' means physical

11

injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss of impairment of the function of any part of the body." Instruction No. 12 provided:

> As used in this Instruction, the term 'attempted' means the doing of any act, with the purpose of committing an offense, which act is a substantial step toward the commission of the offense. A substantial step means conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. It is no defense that it was factually or legally impossible to commit assault if such offense could have been committed had the circumstances been as the defendant believed them to be.

The correct instruction for assault in the first degree as charged in this case is, as King argues, MAI-CR 4th 419.08 (2017), which reads:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about September 28, 2017, in the State of Missouri, the defendant attempted to kill or cause serious physical injury to [Husband] by possessing zip ties, a bush knife, a shower curtain, towels, a passport, a large amount of cash, at least one suitcase filled with clothing, and monitored the home of [Husband],
>
> then you will find the defendant guilty under Count I of assault in the first degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
>
> As use in this instruction, a person attempts to kill or cause serious physical injury if, with the purpose of killing or causing serious physical injury he does an act that is a substantial step toward causing that death or serious physical injury. A "substantial step" is conduct that is strongly corroborative of the firmness of the actor's purpose to cause that death or serious physical injury.

12

As used in this instruction, "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss of impairment of the function of any part of the body.

King does not argue that any element of the offense was omitted from the instructions given to the jury, only that by setting forth the definitions in separate instructions and by not specifically referring to the definitional instructions in the verdict director for this offense the jury was misled and he was prejudiced by the error. However, the notes on use for this instruction state that if the defined terms "assault" and "serious physical injury" "are used in more than one instruction, the paragraph[s] defining [those] terms need not be included in this instruction. In that case, such terms must be defined in a separate instruction." MAI-CR 4th 419.08, note 8 (2017). While the definitions were given in separate instructions, even though the relevant terms were not used in more than one instruction, it is difficult to understand how this would have changed the outcome of the trial when the notes on use would have specifically allowed the definitional instructions to be set forth in separate instructions in any case where the defined term was used in more than one instruction.

Rule 28.03 requires a judicial determination of the *prejudicial* effect of an instructional error, if a proper timely objection is made. Assuming counsel had made a proper and timely objection and the trial court had still submitted the erroneous instruction, King would be required to have shown "that the offending instruction misled, misdirected, or confused the jury, or that this error materially affected the outcome of the trial." *State v. Julius*, 453 S.W.3d 288, 304 (Mo. App. E.D. 2014). Moreover, when determining whether an instructional error was prejudicial, the reviewing court looks at "all submitted instructions together" to see whether the jury was reasonably likely to have been misled or

13

confused. *State v. Anderson*, 306 S.W.3d 529, 535 (Mo. banc 2010). Here, taken together, the instructions given to the jury contained language nearly identical to the language in MAI-CR 4th 419.08. And while King makes much of the fact that the defining instructions say "[a]s used in *this* instruction," (emphasis added) rather than "as used in *these* instruction*s*" it is difficult to believe that the jury would have been misled to think that the definitions did not apply to the verdict-directing instruction, Instruction No. 5, when that is the only instruction where the relevant terms were used. The definitional instructions were each limited to *only* the definition of a single term, and thus there would be no need to define each term only for purposes of the instruction providing its definition.

Because, when taken as a whole, there is no reasonable likelihood that the instructions given misled, misdirected, or confused the jury as to the elements of the offense, there is no reasonable likelihood that the outcome of King's trial would have been different had trial counsel made a timely objection to the instructional error. Because King has shown no prejudice, his claim that his trial counsel was ineffective for failing to object to the instruction fails. *Williams v. State*, 490 S.W.3d 398, 406 (Mo. App. W.D. 2016). King's Point II is denied.

### *Point III; Parole Eligibility*

King's third point on appeal is that the motion court clearly erred in denying his motion for post-conviction relief without an evidentiary hearing because, during sentencing, the sentencing court "was under the mistaken assumption that [King] would not have to serve 85 percent of his sentence before becoming parole eligible." Because appellate counsel did not submit the sentencing hearing transcript on direct appeal, King

14

alleges that the motion court was required to hold an evidentiary hearing to determine whether the sentencing court was, in fact, subject to this mistaken belief when he sentenced King.

"[R]eview of any claimed error at sentencing is a matter for direct appeal." *Arbeiter v. State*, 738 S.W.2d 515, 516 (Mo. App. E.D. 1987). King did bring a challenge to his sentence on direct appeal, arguing that the circuit court erred in entering a conviction for attempted first-degree assault as a class B felony because the information charged the offense as a class C felony. This Court, in its unpublished per curiam order, disagreed with King's position in his direct appeal, noting that his argument was wholly without citation to relevant legal authority and without explanation as to why such legal authority was not available. The sentencing court's alleged mistaken assumption as to his parole eligibility could similarly have been brought on direct appeal. Such matters "cannot be raised in a motion for post-conviction relief except in rare and exceptional circumstances," and post-conviction proceedings "cannot be used as a vehicle to obtain a second appellate review of matters which were or should have been raised on direct appeal." *Id*; *Voss v. State*, 570 S.W.3d 184, 192 (Mo. App. E.D. 2019). And although King faults his appellate counsel for failing to file the sentencing hearing transcript as part of the record on his direct appeal, his point relied on does not allege ineffectiveness of appellate counsel.

Finally, as the motion court found, while the sentencing court might have misstated the range of punishment, King did not show that the resulting sentence was "a manifest injustice or miscarriage of justice" as he was required to do to establish plain error. *State*

*v. Pierce*, 548 S.W.3d 900, 904 (Mo. banc 2018).  The sentence he received was within the range of punishment for the offense he committed.

Point III is denied.

## Conclusion

For all of the above-stated reasons, the judgment of the motion court is affirmed.

_____
Gary D. Witt, Judge

All concur