Bryan DICKERSON, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 89142.

Supreme Court of Missouri,
En Banc.

Oct. 28, 2008.

Motion for Rehearing or Modification
Denied Dec. 16, 2008.

Scott Thompson, Office of Public Defender, St. Louis, MO, for Appellant.

Richard A. Starnes, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

MICHAEL A. WOLFF, Judge.

Frederick "Buddy" Jones died after a fight in June 2003 with Bryan Dickerson at a bar in St. Francois County. After Dickerson's voluntary manslaughter conviction was affirmed on appeal, Dickerson moved for post-conviction relief on the grounds that:

1. Dickerson's trial counsel was ineffective for failing to object to Dickerson's shackling during trial;

2. Trial counsel was ineffective for failing to object to the medical examiner's description of Jones' death as a "homicide;" and

3. Dickerson's appellate counsel was ineffective for failing to appeal the trial court's admission of evidence that Dickerson had been in a fight in another bar earlier on the same day as his bar fight with Jones.

The motion court denied relief without a hearing.

### Facts

The state charged Dickerson with second-degree murder; the jury convicted him of voluntary manslaughter.

The evidence presented at trial, viewed in the light most favorable to the verdict, indicates that Dickerson entered Cuzzin's bar on June 3, 2003. Once inside, Dickerson sat down near Jones, who was also in the bar that evening. Sometime later, Dickerson and Jones began to fight. Onlookers separated the two men before any contact was made, and Dickerson headed toward the exit to leave the bar. As he walked by Jones on his way to the exit,

Dickerson struck Jones in the face with his fist.[1] The blow knocked Jones to the ground, and he hit his head on the concrete floor. He died four months later.

In the weeks preceding trial, defense counsel filed a motion to prohibit the use of physical restraints on Dickerson during trial. The trial court never ruled on this motion, and the record is silent as to the actual use of restraints at trial.

At trial, the state called Dr. Deidiker, the medical examiner who performed the autopsy on Jones. Dr. Deidiker testified that Jones was left in a coma as a result of the head trauma sustained during the fight, but that it was unclear whether Dickerson caused the head trauma by punching Jones in the face or whether Jones sustained the head injury when he fell and struck his head on the concrete floor. Dr. Deidiker testified that while in the hospital, Jones contracted pneumonia, exacerbating his condition. Jones died on October 10, 2003. In response to the state's questions regarding Jones' manner of death, Dr. Deidiker stated that Jones' manner of death was "homicide." Defense counsel did not object to this characterization.

Prior to trial, defense counsel filed a motion *in limine* to exclude evidence that Dickerson had been involved in a fight at another bar in the area on the night of his fight with Jones. During a pre-trial hearing on the issue, the state argued that evidence of the earlier bar fight was relevant to negate Dickerson's claims of self-defense and provocation. The trial court overruled Dickerson's motion to exclude, finding that evidence of the earlier bar fight was relevant and probative. At trial,

the state called Kevin Propst, who testified about an altercation he had with Dickerson a few hours before Dickerson's fight with Jones. Propst testified that he encountered Dickerson at Terry and Margie's, another local bar. Propst testified that while at Terry and Margie's, Dickerson was behaving aggressively toward others in the bar. Propst said he confronted Dickerson about his aggressive behavior and that, in response, Dickerson "sucker-punched" him in the face. Defense counsel objected to Propst's testimony on the basis that it was inadmissible evidence of prior bad acts. The trial court overruled the objection.

The jury found Dickerson guilty of voluntary manslaughter, and the trial court sentenced Dickerson, as a persistent offender, to life imprisonment. The court of appeals affirmed Dickerson's conviction. *State v. Dickerson*, 193 S.W.3d 797 (Mo. App.2006). Pursuant to Rule 29.15, Dickerson filed a motion for post-conviction relief, alleging ineffective assistance of counsel. After the motion court overruled Dickerson's motion without a hearing, Dickerson appealed. Dickerson argues that the motion court erred in denying his 29.15 motion without a hearing.[2]

For reasons that follow, the Court reverses the judgment of the motion court with respect to the alleged shackling and the previous bar fight. In all other respects, the judgment is affirmed. The case is remanded.

## Discussion

### *Dickerson's Shackling at Trial*

■ Dickerson claims that, despite the absence of any reference to his shackling

---

1. There was conflicting testimony at trial about how the fight began. Witnesses for the state testified that Dickerson instigated the fight by behaving aggressively. Dickerson testified that he was not the aggressor and that he struck Jones in self-defense.

2. This Court ordered the case transferred following an opinion by the court of appeals and has jurisdiction. Mo. Const. art. V, sec. 10.

on the record, he was required to wear "steel anklets" at trial in violation of his due process rights under the United States Supreme Court's decision in *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). Dickerson argues that the motion court erred in overruling his 29.15 motion without a hearing on his claim that trial counsel was ineffective for failing to object to Dickerson's shackling at trial.

An evidentiary hearing on a Rule 29.15 post-conviction relief motion is only required if: (1) the motion alleges facts, not conclusions, warranting relief; (2) the facts alleged raise matters not refuted by the case files and the records; and (3) the matters of which the movant complains have resulted in prejudice. Rule 29.15; *Ringo v. State*, 120 S.W.3d 743, 745 (Mo. banc 2003). With respect to claims related to ineffective assistance of counsel, to obtain an evidentiary hearing, the movant must allege facts, not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that movant was thereby prejudiced. *State v. Brooks*, 960 S.W.2d 479, 497 (Mo. banc 1997) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

In his motion, Dickerson alleged that his trial counsel was ineffective for failing to object to Dickerson's shackling at trial. Dickerson argues that a reasonably competent attorney would have been aware that "[t]he law has long forbidden routine use of visible shackles during the guilt phase" of a criminal trial absent some essential state interest. *Deck v. Missouri*, 544 U.S. 622, 626, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005); *Holbrook v. Flynn*, 475 U.S. 560, 568–69, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). Dickerson correctly notes that the longstanding prohibition

against shackling a defendant at trial, a rule with deep roots in English common law, has become axiomatic. *Deck* at 626, 125 S.Ct. 2007 (citing 4 W. Blackstone, Commentaries on the Laws of England 317 (1769)). As the United States Supreme Court explained in *Deck*, "[v]isible shackling undermines the presumption of innocence and the related fairness of the factfinding process" by suggesting "to the jury that the justice system itself sees a 'need to separate a defendant from the community at large.'" *Deck* at 630, 125 S.Ct. 2007 (citing *Holbrook* at 569, 106 S.Ct. 1340).

To merit an evidentiary hearing under Rule 29.15, a movant must allege that the factual basis for his claim is "not refuted by the record." Id. The motion court found that because there is no evidence on the record that Dickerson was shackled at trial or that the shackles were visible to the jury, Dickerson's allegations of ineffective assistance of counsel were refuted by the record. Thus, the motion court reasoned, Dickerson was not entitled to a hearing under Rule 29.15.

It is true that the trial record in this case contains no reference to the use of shackles at Dickerson's trial. For the record to "refute" Dickerson's claim, however, the record would have to "rebut" the claim or "prove [the claim] to be false." Black's Law Dictionary (8th ed.2004). Since the mere absence of any reference to shackling on the record does not prove Dickerson's allegation that he was shackled at trial to be false, the allegation is not "refuted by the record."

It is important to note that this is not a case where a convicted defendant raises after-the-fact allegations of shackling where it is apparent that the question was not raised because shackling was not contemplated and did not occur. In this case, the question of shackling was raised in a

pre-trial motion. Inasmuch as it indicates Dickerson's concern, prior to trial, that he would be shackled, the presence of this motion on the record suggests there may be facts to support Dickerson's claim. At a minimum, a hearing is needed to determine whether shackling in fact took place, whether it was visible to the jury, and whether it was justified.

The motion court also determined that Dickerson was not entitled to a hearing on his ineffectiveness claim under Rule 29.15 because Dickerson did not allege that counsel was aware that Dickerson was shackled. In its findings of fact and conclusions of law, the motion court explains its reasoning, stating that "[m]ovant cannot complain of inaction by counsel, when he does not allege at any point that he notified counsel of the situation." Without a specific allegation that counsel was aware that Dickerson was wearing shackles at trial, the motion court determined that Dickerson's pleadings were deficient.

The motion court is incorrect. Although Dickerson does not specifically allege that trial counsel knew of the shackles, Dickerson's amended 29.15 motion contains facts sufficient to show "that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney." *Brooks* at 497. In the motion, Dickerson alleged that trial counsel filed a pre-trial motion seeking to prevent the use of shackles at trial. After filing such a motion, reasonably competent counsel would have sought a ruling thereon or, at the very least, checked to determine whether Dickerson was in fact wearing shackles at trial so that counsel could

object if necessary. That Dickerson fails, in his amended motion, to allege specifically that trial counsel was aware of Dickerson's shackling at trial does not render the motion deficient.

■ Although Dickerson's trial counsel filed a pre-trial motion to prohibit the use of shackling at trial, counsel failed to subsequently seek a ruling on the motion. Counsel also failed to object to Dickerson's shackling at trial, despite the absence of any "special need" justifying an exception to the general prohibition barring the use of restraints on criminal defendants at trial. If he was visibly shackled, without sufficient justification, a court must conclude, following *Deck*, that Dickerson was denied a fair trial. Given the well-established rule—articulated by the United States Supreme Court in *Deck*—prohibiting the routine use of visible shackles during criminal trials, the failure of trial counsel to object to Dickerson's shackling, if he was, in fact, visibly shackled, is a "fact warranting relief" under Rule 29.15.[3]

To merit relief, Rule 29.15 also requires that Dickerson demonstrate prejudice as a result of counsel's failure to object to Dickerson's shackling at trial. The United States Supreme Court has held that, because requiring a defendant to wear visible shackles at trial "undermines the presumption of innocence and the related fairness of the factfinding process", it is "inherently prejudicial". *Deck* at 635, 125 S.Ct. 2007 (internal citations omitted). Thus, if Dickerson establishes that he was visibly shackled, without the requisite finding of necessity, Dickerson demonstrates preju-

---

**3.** Dickerson correctly notes that by not creating a record of the objection, trial counsel failed to preserve the issue for review on direct appeal. Counsel's failure to preserve the issue on appeal is not, however, a cognizable ground for granting post-conviction relief on Dickerson's claim of ineffective assistance of counsel. *Williams v. State*, 205 S.W.3d 300, 308 (Mo.App.2006). To state a cognizable ineffectiveness claim under Rule 29.15, Dickerson must allege that trial counsel's failure to raise a meritorious objection denied him a fair trial. *State v. Thompson*, 955 S.W.2d 828, 831 (Mo.App.1997).

dice. *Brooks* at 497 (citing *Strickland* at 687, 104 S.Ct. 2052).

With respect to the shackling issue, the motion court erred in overruling the motion without a hearing.

### The medical examiner's characterization of Jones' death as a "homicide"

■ In his amended 29.15 motion, Dickerson also claimed that counsel was ineffective for failing to object when Dr. Deidiker, the medical examiner who performed the autopsy on Jones' body, testified that the manner of death was a homicide. Dickerson argues that the motion court erred in denying his claim for post-conviction relief without a hearing on this issue.

Dickerson argues that, in failing to object to Dr. Deidiker's characterization of the victim's death as a homicide, trial counsel's performance fell below the standard of care of a reasonably competent attorney. Dr. Deidiker's characterization of the victim's death as a "homicide" was, according to Dickerson, "unqualified opinion evidence as to a qualified issue" that rebutted Dickerson's claim of self-defense. Dickerson asserts that the word "homicide" has a "singularly sinister connotation" in the vernacular. Dickerson also contends that the word "homicide" implies intentionality and that, in characterizing Jones' death as such, Dr. Deidiker improperly impinged upon the province of the jury.

Black's Law Dictionary defines "homicide" as "the killing of one human being by the act, procurement, or omission of another." Black's Law Dictionary 375 (Abridged 5th ed.1983).[4] " 'Homicide' is a comprehensive word that means any killing of a human being, and it does not necessarily import a crime, but includes

also those cases in which the law justifies or excuses the taking of human life." CJS HOMICIDE sec. 1 (2008) (internal citations omitted).

As these definitions make clear, the word "homicide" connotes neither intentionality nor criminality on the part of any actor. Dr. Deidiker's use of the word "homicide" merely connoted his belief, after conducting an autopsy and discovering head trauma, that Jones' death resulted from "the act, procurement, or omission of another." The testimony indicates the medical examiner's belief that Jones' death was causally linked to the bar fight, not to some superseding cause. As such, Dickerson's trial counsel was not ineffective for failing to object to Dr. Deidiker's use of the word. The factual conclusion embodied in the use of the word "homicide" is within the medical examiner's expertise. It is quite plausible that trial counsel, as a matter of trial strategy, did not object because he did not wish to highlight the causal connection between Dickerson's punch and Jones' death.

In any event, the motion court did not err in overruling Dickerson's motion without a hearing on this issue.

### Ineffective Assistance of Appellate Counsel: the Earlier Bar Fight

■ Dickerson argues that his appellate counsel was ineffective for failing to appeal the trial court's admission of evidence that Dickerson was involved in another fight earlier on the night that he punched Jones. Dickerson contends that evidence about the earlier fight was inadmissible under the well-established rule that evidence of uncharged misconduct is inadmissible to show the defendant's propensity to commit

---

4. Similarly, Webster's Third New International Dictionary defines homicide as the "killing of one human being by another." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1083 (1993).

the charged crimes. *State v. Ellison*, 239 S.W.3d 603, 606 (Mo. banc 2007).

Despite the fact that Dickerson raised this issue in his amended 29.15 motion, the motion court failed to address Dickerson's claim of ineffective assistance of appellate counsel in its findings of fact and conclusions of law. Dickerson argues that the motion court's failure to address this claim merits remand.

The motion court is required to submit findings of fact and conclusions of law on all issues presented, whether or not a hearing is held. Rule 29.15(j). As noted, the motion court's decision on the shackling issue requires a remand. On remand, the motion court also should address Dickerson's ineffective assistance of appellate counsel claim in its findings of fact and conclusions of law.

### Conclusion

The judgment of the motion court with respect to the shackling and the previous bar fight is reversed. In all other respects, the judgment is affirmed. The case is remanded.

STITH, C.J., PRICE, TEITELMAN, RUSSELL and BRECKENRIDGE, JJ., concur.

LEWIS, Sp.J., dissents.

FISCHER, J., not participating.