

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| JASON C. VOSS, | ) | No. ED106209 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the Circuit Court of |
| | ) | Lincoln County |
| vs. | ) | Cause No. 16L6-CC00099 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Thomas J. Frawley |
| | ) | |
| Respondent. | ) | Filed: March 19, 2019 |

### OPINION

Jason C. Voss ("Movant") appeals the motion court's judgment denying his Rule 29.15

motion for post-conviction relief ("PCR") after an evidentiary hearing.[1] Movant offers five

points on appeal. Movant argues that the motion court clearly erred in denying his Rule 29.15

motion because he proved by a preponderance of the evidence that he was denied effective

assistance of counsel in that: (1) appellate counsel failed to assert on direct appeal that the trial

court erred in overruling Movant's trial counsel's objection to the admission of Douglas Geiger's

("Victim") death certificate; (2) trial counsel failed to request that the trial court redact from

Victim's death certificate that the manner of death was a homicide; (3) trial counsel essentially

admitted to Movant's guilt of involuntary manslaughter and distribution of a controlled

---

[1] All references to Rules are to Missouri Supreme Court Rules (2016).

1

substance during closing argument; (4) trial counsel failed to include in Movant's motion for a new trial that the trial court erred in overruling trial counsel's objection to the testimony of two witnesses (during the penalty phase) pertaining to Movant's involvement in the death of individuals to whom Movant had provided heroin, Movant's association with individuals who overdosed using heroin, and Movant's use of heroin in the presence of a child (Points IV and V). Finding that the motion court did not clearly err in denying Movant's Rule 29.15 motion, we affirm the judgment of the motion court.

## I.       Factual and Procedural Background

Movant was charged with second-degree felony murder and distribution of a controlled substance for his involvement in Victim's death. Trial was held before the Circuit Court of Lincoln County on February 7, 2014, and from February 10, 2014 through February 14, 2014. The following is a summary of the evidence that was presented at Movant's jury trial.

On April 22, 2012, Movant and his friend, Curtis Widener ("Curtis"), were visiting Movant's sister, Wendy Voss ("Wendy"), at her home when Victim called asking Wendy to sell him heroin. Because Wendy had reservations about selling heroin to Victim, Movant agreed to meet Victim and sell him nine capsules of heroin. Curtis agreed to drive Movant to Victim's location in exchange for drugs. Movant and Curtis picked Victim up from his location and, upon Victim's request, drove him to a hotel in Troy, Missouri. On their way to the hotel, Movant handed Victim the nine capsules of heroin as well as two syringes after Victim requested them. Victim promised to pay Movant for the heroin after trying it. Victim gave Curtis one capsule of heroin for driving.

When the three men arrived at the hotel, Movant and Curtis accompanied Victim to his hotel room at Victim's invitation to drink some beer. Curtis poured out a can of beer, and Victim

2

took the empty beer can and started to cut the bottom of the can to prepare the heroin. Movant asked Victim to allow him to cut the can because he had been "doing it a lot longer" and "was a lot better at it."[2] Victim then mixed two capsules of heroin in the cut-up can and, after observing that Victim was "rough" with the needle, Movant drew up the heroin into the syringes. Victim injected himself with the heroin. A few minutes later, Movant noticed that Victim's eyes started to cross and that he began rocking back and forth. Movant believed Victim was manifesting signs of a negative reaction to the heroin and asked Victim several times how he was feeling. Victim responded that he was "alright" to each inquiry. Movant became concerned and went to get ice in case he needed it to bring Victim out of a possible drug-induced coma. Shortly thereafter, Victim paid Movant $100 dollars for the heroin capsules, and Movant and Curtis left the hotel; Victim stayed alone in his hotel room.

After leaving the hotel, Movant and Curtis had a conversation about returning to the hotel room to check on Victim due to the reaction he displayed after injecting himself with the heroin. Later that day, Movant also had a conversation with Wendy about returning to the hotel room to check on Victim. Ultimately, Movant did not return to the hotel or attempt to obtain medical help for Victim.

The following morning, a hotel housekeeper knocked on Victim's door after the checkout time, but no one answered. When she entered the room, the housekeeper found Victim lying face-down on the bed. She noted that there were needles and drugs, and that the room smelled like alcohol. She believed that Victim had suffered a drug overdose and called 9-1-1.

Major Raymond Floyd ("Major Floyd") with the Troy police department responded to the call. When he arrived at Victim's hotel room, he saw Victim lying face down on the bed and

---

[2] During the direct examination of the Lincoln County detective that interviewed Movant's, the detective testified to Movant's statements regarding how Movant aided Victim in preparing and using the heroin.

observed signs of drug use, including the bottom of an aluminum beer can with residue and burn marks, two syringes, two empty capsules, and six capsules with a powdered substance (later identified as heroin). Major Floyd also found an ice bucket containing water, three unopened cans of beer, three plastic cups containing beer, and a note with the name "Wendy" and two phone numbers written on it. A review of the hotel's surveillance videos showed that Victim arrived at the hotel with two other men, later identified as Movant and Curtis. About twenty-five minutes later, Movant and Curtis were seen leaving the hotel without Victim. When Robert Shramek ("Shramek"), the county coroner, arrived at the hotel, he pronounced Victim dead at the scene and Victim's body was transported to the medical examiner's office for an autopsy.

Movant was arrested and a detective with the Lincoln County sheriff's department questioned Movant.[3] During the interrogation, Movant eventually admitted that he: (1) sold nine capsules of heroin to Victim for $100 dollars; (2) provided Victim with two syringes on the way to the hotel; (3) cut the beer can for Victim in order for Victim to prepare heroin in it; and (4) got ice for Victim in case he needed it to shock Victim out of a possible drug-induced coma.

Victim's toxicology report revealed that Victim had been using heroin prior to his death. Christopher Long, a forensic toxicologist, testified that one of the indicators of a heroin overdose is a person's eyes becoming crossed after injecting themselves with heroin. Dr. Kamal Sabharwal, a medical examiner, performed the autopsy and determined that the cause of death was heroin intoxication. A death certificate was issued by Shramek, which listed the cause of death as heroin intoxication and manner of death as a homicide. Shramek explained that he determined the manner of death was a homicide based on the fact that a criminal investigation

---

[3] The interrogation was videotaped, admitted into evidence, and played for the jury.

4

was conducted, the items left at the death scene, his review of the autopsy and toxicology report, and his prior training as a law enforcement officer and emergency medical technician.

Prior to trial, Movant's trial counsel filed a motion in limine to exclude the death certificate on the grounds that Shramek's conclusion regarding the manner of death invaded the province of the jury. The trial court denied the motion, and found that the death certificate was admissible. During Shramek's direct-examination, the prosecutor offered the death certificate into evidence, and trial counsel objected to its admission.[4] The trial court overruled the objection, and the death certificate was admitted into evidence and published to the jury.

After all of the evidence was presented, trial counsel made the following statement during her closing argument:

> The State wants you to hold [Movant] responsible for [Victim's] death because he didn't call 9-1-1, but [Movant] thought [Victim] was okay when they left because [Victim] said he was fine. [Movant] thought about going back to check on [Victim], but he didn't have a way to get there on his own. He was being driven around by people that weekend. And if not going back for help is what bothers you, then you can find [Movant] guilty of Involuntary Manslaughter in the First Degree. Was it reckless for [Movant] not to go back? Maybe it was. If you want to hold [Movant] responsible for his actions that day, find him guilty of Distribution of a Controlled Substance.
> Did [Movant] give [Victim] the Heroin pills? He did. But don't find my client guilty of Murder in the Second Degree. [Victim's] death did not result from my client selling drugs to [Victim]. [Victim's] death resulted from [Victim] taking a syringe full of Heroin and injecting it into his arm.

Movant's trial counsel and the State agreed on the jury instructions; the jury was instructed on second-degree murder, first-degree involuntary manslaughter (a lesser-included offense of second-degree murder), and distribution of a controlled substance. The jury found

---

[4] Shramek testified that he was an elected official with no medical training and is tasked with determining the manner of death of a deceased person under the following categories: suicide, accident, natural causes, homicide, or undetermined. He acknowledged that he determined Victim's manner of death for the purpose of the death certificate.

Movant guilty of first-degree involuntary manslaughter and distribution of a controlled substance.

The Penalty Phase

During the penalty phase, the trial court allowed both Jessica Geiger ("Geiger"), Victim's sister, and Missy Kruse ("Kruse"), Movant's former probation officer, to testify. Specifically, Geiger testified about Movant being a connecting factor in the deaths of other individuals who had died due to a heroin overdose and that Movant was the last one to see these same individuals alive. She explained that other families were present in the courtroom to represent the lives of their loved ones who they had lost "at the hands of [Movant]." Defense counsel objected on the grounds of hearsay; the objection was overruled.

Kruse testified that she was assigned to supervise Movant in October of 2011 while he was on probation for the misdemeanor offense of endangering the welfare of a child. She described the events that led to the charged offense:

> According to the Police Reports obtained, [Movant] was in a home with, at the time I believe it was his ex-wife, their small child and two other adults. In the home there was Heroin and Xanex being used. The two people that own the home went into distress. His wife had also used and so he had told the wife to take their son out of the house so that he could call 9-1-1. From what I understand, the gentleman … that owned the house died that day. The other, the female did survive the overdose. However, his wife, when she took the son out of the home, passed out on a busy side street and the two-year-old was found walking in a busy intersection.

Trial counsel objected on the grounds of hearsay and requested a continuing objection; trial counsel's objection was overruled, but was granted a continuing objection. Kruse further testified that in Movant's initial assessment phase, Movant admitted to her that Movant has witnessed numerous overdoses in the past. She explained that "[Movant] appeared proud that he had been witness to numerous overdoses and that he was able to bring them back to life."

After the conclusion of the penalty phase, the jury recommended a sentence of seven years of imprisonment and a fine to be determined by the court for the first-degree involuntary manslaughter conviction and fifteen years of imprisonment for the distribution of a controlled substance conviction. In accordance with the jury's sentencing recommendation, the trial court sentenced Movant to seven years in the Department of Corrections ("DOC") and a $5,000.00 dollar fine for his involuntary manslaughter conviction and fifteen years in the DOC for the distribution of controlled substance conviction; the sentences were to run consecutively, for a total of twenty-two years' imprisonment. This Court affirmed Movant's convictions on direct appeal in *State v. Voss*, 488 S.W.3d 97 (Mo. App. E.D. 2016), and issued its mandate on May 27, 2016.

Post-Conviction Proceedings

Movant timely filed his *pro se* Rule 29.15 motion for PCR on July 21, 2016, and post-conviction counsel was appointed on July 25, 2016. On August 11, 2016, PCR counsel was granted a 30-day extension to file the amended motion. PCR counsel timely filed the amended motion and requested an evidentiary hearing on October 24, 2016.[5] In the amended motion, Movant raised five points claiming that both his trial and appellate counsel rendered ineffective assistance; those arguments substantively mirror the points that Movant now asserts on appeal.

On July 5, 2017, an evidentiary hearing was held where trial counsel, appellate counsel, and Movant testified. Trial counsel testified that she submitted a motion in limine requesting that the trial court exclude Victim's death certificate because it listed the manner of death as a homicide, which she argued was the ultimate issue for the jury to determine. The trial court

---

[5] Movant's initial 60-day deadline to file his amended motion was September 23, 2016 (60 days from the date counsel was appointed (July 25, 2016)). With the 30-day extension of time granted by the motion court, Movant's amended PCR motion deadline was extended until Sunday, October 23, 2016. As a result, the amended motion was due the following day—Monday, October 24, 2016, pursuant to Rules 29.15(g) and 44.01(a).

denied the motion and determined that the death certificate was admissible. Trial counsel confirmed that she had no strategy in failing to request that the trial court redact the homicide conclusion from the death certificate. However, she explained that it was possible that she did not request the redaction because the trial court had already ruled on the issue by overruling her objection. Additionally, appellate counsel testified that she did not raise the issue on direct appeal because, after reviewing the trial transcript and conducting legal research on the issue, she did not believe it was a "winnable issue on appeal."

In regards to her statements during closing argument, trial counsel testified that her trial strategy was to convince "the jury to not convict [Movant] of Murder in the Second Degree and to consider … Involuntary Manslaughter instead[.]" She explained that while she would have preferred Movant not be convicted of any homicide, she did not think that pursuing acquittal of the second-degree murder charge was a reasonable strategy because the "jury was going to want to hold [Movant] responsible in some way for [Victim's] death." She testified that she had discussed her trial strategy with Movant and that Movant supported this decision. However, Movant testified that he did not recall whether trial counsel had discussed this trial strategy with him.

In regards to her failure to include a claim concerning Geiger's and Kruse's testimony in the motion for a new trial, trial counsel testified that she had objected to their testimony and asked for a continuing objection, which was granted. She indicated that she did not have a trial strategy for not including a claim regarding the witnesses' testimony in the motion for new trial. Trial counsel acknowledged that, on direct appeal, our Court held that the admission of the witnesses' testimony, while erroneous, was not prejudicial.

8

On November 14, 2017, the motion court entered its judgment denying Movant's Rule 29.15 motion. The motion court concluded that trial counsel was not ineffective for not requesting that the trial court redact "homicide" from Victim's death certificate because the "factual conclusion from use of the word 'homicide' to characterize a victim's death has been upheld" by the Supreme Court of Missouri. The motion court cited *Dickerson v. State*, 269 S.W.3d 889, 894 (Mo. banc 2008) to support its determination. The motion court noted that the use of the word "homicide" "means any killing of a human being and does not necessarily import a crime; … [it] connotes neither intentionality nor criminality on the part of any actor." The motion court also noted that a "death certificate is prima facie evidence of the facts stated therein[.]" The motion court therefore concluded that the coroner's opinion in the death certificate served to specify the manner of death, and in no way refers to Movant as the person causing Victim's death. Further, the motion court concluded that appellate counsel made a reasonable strategic decision not to raise a claim pertaining to the death certificate on direct appeal.

In regards to trial counsel's statements during closing argument, the motion court concluded that trial counsel's strategy to submit the lesser-included offense of involuntary manslaughter was reasonable trial strategy. The motion court found Movant's testimony not credible when he testified that he could not remember discussing the trial strategy of presenting the lesser-included offense with trial counsel. Lastly, as to trial counsel's failure to include the claims in the motion for new trial pertaining to the witnesses' admitted testimony during the penalty phase, the motion court held that our Court reviewed the issue on direct appeal and found no outcome-determinative prejudice due to the substantial admissible evidence that supported

9

Movant's sentence. Therefore, Movant was not entitled to post-conviction relief on those claims because Movant had raised the issues on direct appeal.

This appeal follows.

## II.    Standard of Review

Appellate review of a motion court's Rule 29.15 judgment "is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Price v. State*, 422 S.W.3d 292, 294 (Mo. banc 2014); Rule 29.15(k). "Findings and conclusions are clearly erroneous only if a full review of the record definitely and firmly reveals that a mistake was made." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000). A reviewing court must uphold a motion court's judgment if it is sustainable on any ground. *McGuire v. State*, 523 S.W.3d 556, 563 (Mo. App. E.D. 2017).

## III.    Discussion

Movant offers five points on appeal, arguing in each that the motion court clearly erred in denying his Rule 29.15 motion because he proved by a preponderance of the evidence that his trial or appellate counsel was ineffective. Because all five points rest on whether trial and appellate counsel provided ineffective assistance of counsel, we apply the test from *Strickland v. Washington,* 466 U.S. 668 (1984) to each point. To establish ineffective assistance of counsel under *Strickland,* a movant must prove "by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure." *Hopkins v. State*, 519 S.W.3d 433, 436 (Mo. banc 2017); *see also Strickland*, 466 U.S. at 687. If a movant fails to establish either the performance or the prejudice prong, "then we need not consider the

10

other and the claim of ineffective assistance must fail." *Roberts v. State*, 535 S.W.3d 789, 797 (Mo. App. E.D. 2017).

To satisfy the performance prong, a movant must overcome the strong presumption that trial counsel's conduct was reasonable and effective by showing "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *McGuire,* 523 S.W.3d at 563 (quoting *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009)). To satisfy the prejudice prong of the *Strickland* test, a movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006); *see also Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Points I and II

In his first point on appeal, Movant argues that the motion court clearly erred in denying his claim that appellate counsel was ineffective for failing to assert on direct appeal that the trial court erred in overruling trial counsel's objection to Victim's death certificate on the basis that it listed the manner of death as "homicide." In his second point on appeal, Movant contends that trial counsel was ineffective by failing to request that the trial court redact the coroner's conclusion that the manner of death was "homicide." Because both of Movant's first and second points focus on appellate and trial counsel rendering ineffective assistance in connection with the admissibility of the death certificate, we address those points together.

Prior to trial, trial counsel filed a motion in limine to exclude the death certificate on the grounds that it invaded the province of the jury because it listed the manner of death as "homicide." Conversely, the prosecution argued that a death certificate was prima facie evidence

11

of the manner of death and the cause of death. The trial court found that there was no legal authority that rendered the death certificate inadmissible, and thus denied the motion. During the State's direct examination of Shramek, trial counsel objected to the admission of the death certificate. The court overruled the objection; the death certificate was entered into evidence and published to the jury. At the evidentiary hearing, trial counsel testified that she objected to the death certificate being admitted into evidence because it included Shramek's opinion that the death was a homicide, which was an issue for the jury to determine. Trial counsel admitted that she had no strategy for failing to request that Shramek's homicide conclusion be redacted from the death certificate. However, she explained that it was possible that she did not request the redaction because the trial court had already ruled on the issue by overruling her objection. Movant's trial counsel is not ineffective for failing to make an unmeritorious motion requesting a redaction of the manner of death because there were no grounds or legal authority on which to base such a motion. *See Leisure v. State*, 828 S.W.2d 872, 877 (Mo. banc 1992) ("Failure to make a motion of extremely doubtful validity provides no basis for a claim of ineffective assistance of counsel."); *Baumruk v. State,* 364 S.W.3d 518, 529 (Mo. banc 2012) ("Counsel is not ineffective for failing to file a meritless motion."); *Tucker v. State,* 468 S.W.3d 468, 474 (Mo. App. E.D. 2015).

In the present case, Victim's death certificate was admitted for the purpose of proving Victim's death, which included the cause and manner of death, and legal authority supports that such evidence is admissible. "Death, like any other fact, may be shown by many types of circumstantial or direct evidence." *State v. Morrow*, 541 S.W.2d 738, 742 (Mo. App. E.D. 1976). Generally, a death certificate is admissible to prove death and to offer some evidence as to the immediate cause of death. *State v. Fakes*, 51 S.W.3d 24, 28–29 (Mo. App. W.D. 2001). "[A]

12

certificate of death is prima facie evidence of the facts stated therein, but it is given no greater force than any other prima facie evidence of that fact." *State v. Smith*, 725 S.W.2d 631, 632 (Mo. App. E.D. 1987); *see also Morrow*, 541 S.W.2d at 742; *Fakes*, 51 S.W.3d at 29.

In *Dickerson v. State*, 269 S.W.3d at 894, a movant similarly argued that his trial counsel was ineffective for failing to object to the medical examiner's characterization of the victim's death as a homicide. The Supreme Court of Missouri reasoned that the movant's trial counsel was not ineffective for failing to object to the medical examiner's use of the word "homicide" because "the word 'homicide' connotes neither intentionality nor criminality on the part of any actor." *Id*. Our Supreme Court found that the use of the word "'homicide' merely connoted [the medical examiner's] belief, after conducting an autopsy and discovering head trauma that [the victim's] death resulted from the act, procurement, or omission of another." *Id*. As a result, "[t]he factual conclusion embodied in the use of the word 'homicide' was considered to be within the medical examiner's expertise," and thus admissible. *Id*.

Similar to *Dickerson*, Shramek's conclusion as to the manner of death is considered to be within his expertise since his position required him to characterize Victim's manner of death. Shramek testified at trial that he formed his conclusion based on the circumstances of the case, including the fact that a criminal investigation was conducted, the conclusions in the toxicology and the medical examiner's report, and the evidence at the death scene. The characterization of the manner of death as "homicide" in the death certificate was Shramek's opinion that Victim's death resulted from "the act, procurement, or omission of another." See *id*. Shramek's opinion on the issue of the manner of death did not extend to conclude that Movant was the person that caused Victim's death. As a result, the death certificate was properly admitted as "prima facie evidence of the facts stated therein." *Fakes*, 51 S.W.3d at 29; *State v. Croka*, 693 S.W.2d 133,

13

135 (Mo. App. W.D. 1985). Therefore, since the death certificate and the assertions therein were admissible at trial, trial counsel was not ineffective for failing to request a redaction of the listed manner of death.

Additionally, appellate counsel was not ineffective for failing to argue on direct appeal that the trial court erred in overruling trial counsel's objection to the admission of Victim's death certificate on the basis that the coroner listed the manner of death as "homicide. "To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Collings v. State*, 543 S.W.3d 1, 14 (Mo. banc 2018). A movant must also show that there is a reasonable probability that the outcome of direct appeal would have been different had counsel raised the claim in question. *Id*. "Appellate counsel is not ineffective for failing to raise a non-meritorious claim on appeal." *Morse v. State*, 462 S.W.3d 907, 913 (Mo. App. E.D. 2015).

At the evidentiary hearing, appellate counsel testified that she raised four issues on direct appeal; three issues concerning the admission of evidence during the sentencing phase and a claim of insufficient evidence of involuntary manslaughter. She also indicated that she considered raising a claim concerning the death certificate, but after researching the matter and reviewing the record, she determined that the claim would not be meritorious.

Movant's claim that his appellate counsel was ineffective mirrors the argument that he makes against his trial counsel. Because we have determined that the death certificate and the assertions therein were admissible at trial, we find that a claim pertaining to the death certificate on appeal would have been frivolous. *See Spells v. State*, 277 S.W.3d 343, 351 (Mo. App. W.D. 2009) (holding that, since the reviewing court determined that the jury instruction at issue was

14

correct as submitted, a claim pertaining to the submission of the jury instruction on appeal would have been frivolous; thus appellate counsel was not ineffective for not raising the issue on appeal). "Appellate counsel cannot be ineffective for failing to raise a frivolous claim." *Id.*; *see also Glover v. State*, 225 S.W.3d 425, 429 (Mo. banc 2007).

Because Movant has failed to show that his trial counsel or appellate counsel's performance was deficient in regards to Movant's alleged errors involving the death certificate, we need not analyze the prejudice prong to resolve Movant's first and second points. *See Roberts*, 535 S.W.3d at 797. Therefore, we find that Movant has failed to demonstrate by a preponderance of the evidence that his trial counsel was ineffective for failing to request that the trial court redact the coroner's conclusion that the manner of death was "homicide," and that his appellate counsel was ineffective for failing to raise the issue on direct appeal. The motion court did not clearly err in denying these PCR claims.

Points I and II are denied.

Point III

In his third point on appeal, Movant argues that trial counsel was ineffective by conceding to Movant's guilt of involuntary manslaughter and distribution of a controlled substance during closing argument.[6]

During her closing argument, trial counsel presented a lesser-included offense as an alternative to the second-degree murder charge by guiding the jury to consider the following:

> And if not going back for help is what bothers you, then you can find [Movant] guilty of Involuntary Manslaughter in the First Degree. Was it reckless for

---

[6] We only review Movant's argument regarding trial counsel conceding that Movant was guilty of involuntary manslaughter because Movant failed to provide an argument for the distribution of a controlled substance offense. *See Caranchini v. Missouri Bd. of Law Exam'rs*, 447 S.W.3d 768, 772 (Mo. App. W.D. 2014) (quoting *State v. Nunley,* 341 S.W.3d 611, 623 (Mo. banc 2011)) ("Arguments raised in the points relied on portion of an appellate brief that are not supported in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review.").

15

[Movant] not to go back? Maybe it was.… But don't find my client guilty of Murder in the Second Degree. [Victim's] death did not result from my client selling drugs to [Victim]. [Victim's] death resulted from [Victim] taking a syringe full of Heroin and injecting it into his arm.

At the evidentiary hearing, trial counsel testified that her primary goal was "to get the jury to not convict [Movant] of Murder in the Second Degree and to consider the Involuntary Manslaughter instead.…" She explained that she did not want Movant to be convicted of second-degree murder because of "the [precedential] effect that it would have in Lincoln County and elsewhere … if any criminal defendant was convicted of Murder in the Second Degree related to Distribution of a Controlled Substance"; trial counsel did not want Movant's case to start a trend in the State of Missouri. In regards to her trial strategy, trial counsel testified that:

> Ideally, I would have liked the jury to have convicted [Movant] only of the Distribution and not of Involuntary Manslaughter at all, but I did not think it would be a reasonable strategy[.] I think the jury was going to want to hold [Movant] responsible in some way for [Victim's] death. So that is why I offered the Involuntary Manslaughter Instruction and argued it in the Closing Argument.

Trial counsel confirmed that she discussed this trial strategy with Movant and that he supported that strategy because "[h]e didn't want to be convicted of Murder in the Second Degree." In accordance with her trial strategy, trial counsel submitted an instruction for involuntary manslaughter during the instruction conference.

Contrary to Movant's argument that trial counsel conceded to Movant's guilt, a close review of the record reveals that trial counsel's closing statements were consistent with the evidence and trial counsel's argument; trial counsel did not concede Movant's guilt, but rather offered the jury a lesser-included offense to consider during deliberation. It is reasonable trial strategy to present a lesser-included offense when counsel believes that outright acquittal is not a realistic option. *McNeal v. State*, 412 S.W.3d 886, 892–93 (Mo. banc 2013). That is because when "one of the elements of the offense charged remains in doubt, but the defendant is plainly

16

guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." *Id.* at 892. In a criminal trial, "juries are obligated as a theoretical matter to acquit a defendant if they do not find every element of the offense beyond a reasonable doubt, [however] there is a substantial risk that the jury's practice will diverge from theory when it is not presented with the option of convicting of a lesser offense instead of acquittal." *Id.*

At the evidentiary hearing, trial counsel testified that she did not want to argue that Movant committed no crime because, considering the State's evidence against Movant, it seemed possible that the jury would want to hold Movant responsible; the State's evidence was that Movant sold heroin to Victim, Movant identified that Victim was having a negative reaction to the heroin, Movant got ice to use in case Victim went into a drug-induced coma, and Movant did not return to the hotel room to aid Victim. Without an involuntary manslaughter instruction, the jury would have been left with only two choices: conviction of second-degree murder or acquittal. Trial counsel pursued her trial strategy because she believed an acquittal was unlikely; she submitted an instruction for involuntary manslaughter and, during her closing argument, she introduced the lesser-included offense. Movant was subsequently found guilty of involuntary manslaughter—not second-degree murder. We find that, under the circumstances, trial counsel employed a reasonable trial strategy by offering the jury a middle ground for conviction and, in doing so, Movant avoided a conviction of second-degree murder.

Further, Movant argues that he did not recall having a discussion with his trial counsel regarding the lesser-included offense of involuntary manslaughter. However, the motion court found that Movant's testimony to this effect was not credible. In review of a motion court's denial of a PCR motion, we defer to the court's credibility determinations on witness testimony because of the motion court's superior ability to judge the credibility of the witnesses. *Hurst v.*

17

*State*, 301 S.W.3d 112, 119 (Mo. App. E.D. 2010). The motion court is free to believe or disbelieve the testimony of any witness given at an evidentiary hearing, including that given by the movant. *Id.* Because nothing in the record leads this Court to conclude that the motion court's credibility findings should not be given deference, we defer to the motion court's credibility determination of Movant's testimony.

Therefore, we find that Movant has failed to establish that trial counsel failed to perform with the degree of skill, care, and diligence of a reasonably competent attorney in similar circumstances, and thus, we need not analyze the prejudice prong. *See Roberts*, 535 S.W.3d at 797. Thus, we find that the motion court did not clearly err in denying Movant's PCR claim.

Point III is denied.

Points IV and V

In his fourth and fifth points on appeal, Movant argues that trial counsel was ineffective for failing to include in the motion for new trial claims that the trial court erred in overruling Movant's objections to Geiger's and Kruse's testimony during the penalty phase, and was thereby prejudiced. Specifically, Movant argues that, had trial counsel included these claims in the motion for new trial, there would have been an opportunity for the trial court to correct its error and there is a reasonable probability that the outcome of Movant's trial during the penalty phase would have been different in that he would have received less time or a new penalty phase. We decline to address these points on the merits because the issues were raised and resolved against Movant on direct appeal.

It is well established that issues decided on direct appeal may not be relitigated in a PCR motion under a theory of ineffective assistance of counsel; "[a] Rule 29.15 motion cannot be used to obtain review of matters which were or should have been raised on direct appeal."

18

*McCoy v. State*, 431 S.W.3d 517, 523 (Mo. App. E.D. 2014); *Ayres v. State*, 93 S.W.3d 827, 832 (Mo. App. E.D. 2002); *Zink*, 278 S.W.3d at 191.

On direct appeal, Movant claimed that the "trial court committed reversible error in admitting portions of evidence during the penalty phase of trial, over defense counsel's objections." *Voss*, 488 S.W.3d at 114. Specifically, Movant argued that the trial court erred in overruling trial counsel's objection to the testimony of Geiger and Kruse. Our Court noted on direct appeal that "[Movant] concede[d] this claim [was] not preserved for review because he failed to raise it in his motion for new trial, and therefore, his claim [could] only be reviewed for plain error." This Court found that, even though Geiger's and Kruse's testimony was erroneously admitted, it caused no prejudice.[7] On appeal of the denial of his PCR motion, Movant attempts to relitigate the issue that was reviewed on direct appeal under a theory of ineffective assistance of counsel. "As a general rule, a plain error claim previously reviewed and denied on direct appeal cannot be relitigated on a theory of ineffective assistance of counsel in a post-conviction proceeding." *Henningfeld v. State*, 451 S.W.3d 343, 349 (Mo. App. E.D. 2014). This Court reviewed the merits of his claims of error during his direct appeal; Movant cannot use his post-conviction proceeding as "a vehicle to obtain a second appellate review of matters raised on direct appeal." *Id.* at 348–49; *see also Strong v. State*, 263 S.W.3d 636, 651–52 (Mo. banc 2008) (holding that the movant was not entitled to post-conviction relief based on his claim that trial counsel was ineffective for not preserving an objection to the prosecutor's use of photographs admitted into evidence and photographs of victims (during penalty-phase closing argument)

---

[7] On direct appeal, our Court concluded that even though the testimony was erroneously admitted, "there was substantial evidence presented to the jury to believe [Movant] constituted a genuine threat to others and that a maximum sentence was appropriate, and we cannot conclude there is a reasonable probability that the jury would have imposed a lesser sentence but for the erroneously-admitted evidence." *Voss*, 488 S.W.3d at 126.

when the movant's claims of error relating to the same photographs were denied on direct appeal).

## IV.    Conclusion

Based on the foregoing, we affirm the judgment of the motion court.

_____

Colleen Dolan, Judge

Kurt S. Odenwald, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

20