

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| SHAWN H. FLAHERTY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD85542 |
| | ) | |
| STATE OF MISSOURI, | ) | Filed: August 15, 2023 |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Buchanan County
The Honorable Patrick K. Robb, Judge**

**Before Division Three: Alok Ahuja P.J., and
Karen King Mitchell and Edward R. Ardini, Jr., JJ.**

In 2018, Shawn Flaherty was convicted following a jury trial of one count of domestic assault in the second degree and one count of armed criminal action. The charges stemmed from an incident in which Flaherty shot his wife in the leg. After we affirmed his convictions on direct appeal, Flaherty filed a motion for post-conviction relief pursuant to Supreme Court Rule 29.15. Flaherty's amended motion made a single claim: that his trial counsel was ineffective for failing to request that the jury be instructed on the lesser-included offense of domestic assault in the *fourth* degree.

Following an evidentiary hearing, the circuit court issued a judgment in which it found that Flaherty's counsel had performed deficiently in failing to

request a lesser-included offense instruction for fourth-degree domestic assault. The court concluded, however, that Flaherty could not show that he was prejudiced by counsel's deficient performance, because a jury had convicted Flaherty of a greater offense (*second*-degree domestic assault).

Flaherty appeals. We reverse.

## Factual Background

On June 11, 2018, Flaherty and his wife got into an argument in the home which they shared with their two teenage children and a family friend. Flaherty and his wife had experienced marital problems in the past, which included Flaherty making threats of physical violence against his wife.

Flaherty began brandishing a gun while sitting across from his wife. Flaherty made a variety of threatening statements, including telling his wife that "if he couldn't have her then no one could," and that "if we call the cops we're going to all go out with a bucket of bullets." One of Flaherty's son's friends, who was present at the time, unsuccessfully attempted to pull the gun away from Flaherty.

Flaherty's daughter later arrived home. She also attempted to wrest the gun from Flaherty, after seeing him point it at his wife. Flaherty's daughter pushed him to the floor. She grabbed the barrel of the gun with her left hand, and Flaherty's wrist with her right hand. Flaherty's son held his other arm at the same time. Flaherty's daughter testified that she and Flaherty yanked the gun back and forth twice as she attempted to take the gun from him. Flaherty's finger was on the trigger, and as they struggled the gun discharged. Flaherty's wife was shot in the knee.

2

Flaherty's daughter testified that she did not see Flaherty aim the gun at her mother, and did not see him pull the trigger. On the other hand, Flaherty's wife and his son's friend testified that they saw Flaherty pull the trigger, as the gun was pointed in wife's direction. Contrary to Flaherty's daughter's testimony, his son's friend also denied that the gun moved around much before being fired; she testified that she did not see "a tug and pull as it was going on."

As of the time of trial in June 2019, Flaherty's wife was still using a wheelchair because of her injuries. She testified that she had not walked since the shooting, although she was hopeful that she would experience improvement with future physical therapy.

Police arrested Flaherty the same evening as the shooting. He admitted to police that he had shot his wife, but claimed it was an accident.

The State charged Flaherty with two offenses: domestic assault in the first degree, in violation of § 565.072[1] (Count I); and armed criminal action, in violation of § 571.015 (Count II). At trial, Flaherty's attorney requested that the court instruct the jury on Count I on the lesser-included offense of domestic assault in the second degree (§ 565.073); counsel did not request any other lesser-included-offense instructions.

At trial, Flaherty did not contest that he had shot his wife, but contended – consistent with his statements to police – that it was an accident. During the defense case, Flaherty presented testimony from an expert in firearms safety and marksmanship. The expert testified that the gun involved in the incident was a single-action revolver, which was based on the historic design of the Colt single-

---

[1] Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2017 Supplement.

3

action Army revolver introduced in 1873.  The manual for a similar Colt revolver warns that "[t]his revolver has been recreated from a historic design and is extremely dangerous to handle when loaded."  The expert testified that the gun did not have the safety features that "we would typically see in a modern handgun," such as a hammer block designed to prevent accidental discharges, or a safety switch which "prevents the gun from being fired even if someone tries to pull on the trigger."

Besides the lack of modern safety features, the defense firearms expert also testified that Flaherty's gun was "very easy to unintentionally discharge" because of the minimal amount of pressure required to pull the trigger, and the very short distance the trigger had to travel to fire the weapon.  The expert testified that the trigger weight for Flaherty's gun was only 2.29 pounds of pressure, which he testified was "very much on the light side of th[e] range" of most modern firearms.  The necessary trigger travel distance was only .025 inches, which the expert testified was less than the thickness of a standard credit card.  By comparison, the expert testified that "the neighborhood of half inch [of trigger travel under resistance] is pretty typical for a [modern] double-action trigger."  The expert testified that the light trigger weight, and the short trigger travel, were each factors which increased the risk of an unintentional discharge.  He testified that, "[w]hen the factor are combined[,] . . . the risk of unintentional discharge is compounded.  . . .  [W]hen you put both of them together, there's virtually no margin for error."

The firearms expert also testified that a firearms user should "keep the trigger finger off of the trigger and outside the trigger guard until the person has

4

made the decision to shoot." Although this is the best practice, he testified that "[i]t's a very common mistake" and a "natural impulse" for a user to pick up a gun and immediately put their finger on the trigger, "[b]ecause that's how the firearm is designed to be gripped naturally." The risk of mistakenly gripping the gun with a finger on the trigger increased during a high-stress situation. The expert noted that, in one study, even 20.6% of trained police officers inappropriately placed their fingers on the trigger of their firearms during a training scenario – and were unaware that they had done so.

Finally, Flaherty's firearms expert also testified that, given the design of Flaherty's gun, it was possible that his daughter had come into contact with the spur on the gun's hammer as she reached across to grab Flaherty's wrist. The expert testified that Flaherty's daughter could have thereby unintentionally cocked the gun.

The jury convicted Flaherty of the lesser-included offense of domestic assault in the second degree and armed criminal action. The circuit court sentenced Flaherty to seven years imprisonment on Count I, and three years on Count II, with the sentences ordered to run consecutively.

We affirmed Flaherty's convictions on direct appeal in *State v. Flaherty*, No. WD83035, 617 S.W.3d 525 (Mo. App. W.D. Feb. 23, 2021) (*mem.*). Flaherty's sole claim on appeal was that the circuit court had erroneously admitted evidence concerning events following the shooting (in which he had threatened suicide, and struggled with his son and his son's friend over another firearm, during which that other firearm accidentally discharged).

Following the affirmance of his convictions, Flaherty filed a *pro se* motion to set aside the judgment pursuant to Rule 29.15 on May 28, 2021. Flaherty's appointed counsel filed an amended motion. The amended motion contended that Flaherty's trial counsel was ineffective for failing to request an additional lesser-included offense instruction, for domestic assault in the fourth degree, on Count I.

The circuit court held an evidentiary hearing on the amended motion on May 5, 2022. At the evidentiary hearing, Flaherty's trial counsel testified that she was pursuing an "accidental defense" at trial, based on the theory that Flaherty and his daughter "struggled over the weapon and it went off during the struggle." Counsel agreed that "[t]he only essential element [of domestic assault] in dispute was Mr. Flaherty's mental state during the incident." Trial counsel testified that, although she remembered rejecting *third*-degree domestic assault as a potential lesser-included offense, "I can't recall why I didn't decide to go ahead and submit fourth degree."

The circuit court entered its judgment denying post-conviction relief on July 11, 2022. The court concluded that, in light of the evidence at trial, Flaherty would have been entitled to a lesser-included offense instruction on domestic assault in the fourth degree if trial counsel had requested it. The court also found that counsel did not have a reasonable strategic reason for failing to request an instruction on fourth-degree domestic assault. Although counsel argued that Flaherty had shot his wife accidentally, the court noted that "counsel did not pursue an 'all-or-nothing-defense'" at trial. Instead, trial counsel had requested an instruction on second-degree domestic assault, which hypothesized that

6

Flaherty had "recklessly caused serious physical injury to" his wife "by . . .

engaging in a struggle over the handgun during which the handgun discharged

hitting" his wife. The circuit court observed that trial counsel had suggested to

the jury in closing arguments that second-degree domestic assault was available

to it as an option, if jurors concluded that the State had failed to prove that

Flaherty had acted intentionally.

In these circumstances, the circuit court concluded:

> It was not objectively reasonable for trial counsel to submit a lesser-included instruction on the charged offense and argue to the jury its applicability and not submit another available lesser-included instruction which was consistent with the defense that Flaherty had accidentally shot his wife; i.e. he acted with criminal negligence and caused physical injury by means of a gun. The submission of domestic assault in the fourth degree was consistent with defense's theory at trial and would have allowed the jury to consider whether he acted with criminal negligence in addition to recklessness. Also, had Flaherty been found guilty of domestic assault in the fourth degree, it would have foreclosed the jury from being able to find Flaherty guilty of armed criminal action under Count II since domestic assault in the fourth degree is a misdemeanor offense.

Although it found that trial counsel's performance was deficient, the circuit

court concluded that Flaherty was not entitled to post-conviction relief, because

he was "unable to show that there is a reasonable probability that, but for

counsel's errors, the result of the trial would have been different." The judgment

noted that the jury had convicted Flaherty of domestic assault in the second

degree. According to the court, "[t]his finding of guilt by the jury refutes

Flaherty's claim that he suffered prejudice." The court reasoned that, "[i]n order

to conclude the submission of the lesser-included instruction would have likely

7

changed the outcome of Flaherty's trial, this Court would need to find that the jury did not believe the evidence was sufficient to find Flaherty guilty of domestic assault in the second degree and the jury found Flaherty guilty despite its oath and the court's instructions on the law." Based on its conclusion that Flaherty could not show prejudice resulting from counsel's incompetent failure to request an instruction on fourth-degree domestic assault, the circuit court denied post-conviction relief.

Flaherty appeals.

## Standard of Review

Our review of a circuit court's judgment in a post-conviction relief proceeding "is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Moore v. State*, 328 S.W.3d 700, 702 (Mo. 2010); Rule 29.15(k). The court's findings and conclusions are clearly erroneous if, after reviewing the entire record, we are left with the "definite and firm impression that a mistake has been made." *Price v.* State, 422 S.W.3d 292, 294 (Mo. 2014).

## Discussion

Generally, to be entitled to relief for ineffective assistance of counsel, a movant must show, by a preponderance of the evidence, that (1) trial counsel failed to exercise the level of skill and diligence of a reasonably competent attorney; and (2) the movant was thereby prejudiced. *Tisius v. State*, 519 S.W.3d 413, 420 (Mo. 2017) (citing *McIntosh v. State*, 413 S.W.3d 320, 324 (Mo. 2013) (in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984))).

> To prevail on a claim that counsel was ineffective for failing to request a lesser-included offense instruction, [a movant] must

8

> demonstrate "the evidence would have required the trial court to submit the instruction had one been requested, that the decision not to request the instruction was not reasonable trial strategy, and that prejudice resulted." "Even where the evidence supports the submission of a lesser-included offense instruction, [the movant] must still overcome the presumption that counsel's decision not to request the instruction was reasonable trial strategy."

*Watson v. State*, 520 S.W.3d 423, 435 (Mo. 2017) (quoting *McCrady v. State*, 461 S.W.3d 443, 448 (Mo. App. E.D. 2015)).

On appeal, the parties do not dispute that domestic assault in the fourth degree is a lesser-included offense of domestic assault in the first degree, since "[i]t is specifically denominated by statute as a lesser degree of the offense charged." § 556.046.1(2). Moreover, the parties do not dispute that, if trial counsel had requested it, the circuit court would have been required to submit an instruction on fourth-degree domestic assault.

Flaherty's claim relies on the differences between three domestic assault offenses. The State charged Flaherty with *first-degree* domestic assault under § 565.072, which required it to show that Flaherty intended to cause serious physical injury to his wife when she was shot. First-degree domestic assault is defined as a class A felony where the defendant "attempts to kill or knowingly causes or attempts to cause serious physical injury to a domestic victim," and "in the course thereof the person inflicts serious physical injury on the victim." § 565.072.1, .2. A defendant is guilty of an "attempt" to commit an offense "if, with the purpose of committing the offense, a person performs any act which is a substantial step towards the commission of the offense." § 562.012.1. A defendant acts "with purpose" "with respect to his or her conduct or to a result

9

thereof when it is his or her conscious object to engage in that conduct or to cause that result." § 562.016.2; *see also* § 556.061(41).

Thus, to convict Flaherty of domestic assault in the first degree, the jury was required to find that he acted with the conscious object of causing serious physical injury to his wife.

Flaherty's trial counsel requested, and the circuit court submitted, a lesser-included-offense instruction on *second-degree* domestic assault, which hypothesized that Flaherty had "[r]ecklessly cause[d] serious physical injury to" his wife, in violation of § 565.073.1(2). "A person '**acts recklessly**' or is reckless when he or she consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4; *see also* § 556.061(42). The jury convicted Flaherty of this lesser offense, rejecting the State's contention that Flaherty had intended to seriously injure his wife.

Flaherty now contends that his trial counsel should have also requested an instruction on *fourth-degree* domestic assault under § 565.076.1(2), which applies where "[w]ith criminal negligence the person causes physical injury to [a] domestic victim by means of a deadly weapon or dangerous instrument." "A person '**acts with criminal negligence**' or is criminally negligent when he or she fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.5; *see also* § 556.061(16).

Thus, the jury could convict Flaherty of either second-degree, or fourth-degree, domestic assault, without finding that he had intended to harm his wife. The critical – but subtle – distinction between second- and fourth-degree domestic assault would be whether Flaherty *consciously disregarded* the substantial risk of injury to his wife, or was instead *unreasonably ignorant* of that risk.

## I.

Flaherty argues, in two Points, that the circuit court clearly erred in finding that he was not prejudiced by counsel's failure to request an instruction on domestic assault in the fourth degree.

The State contends that the judgment can be affirmed without addressing the prejudice issue. Separate and apart from the question of prejudice, the State argues that the circuit court clearly erred in concluding that trial counsel's failure to request an instruction on domestic assault in the fourth degree constituted deficient performance. We disagree.

The State contends that, because counsel argued during trial that Flaherty had shot his wife accidentally, it would have undermined counsel's trial strategy to request an instruction on fourth-degree domestic assault. According to the State, "[i]t is not ineffective assistance of counsel to forgo requesting a lesser-included-offense instruction when doing so would have given the jury an option of a 'middle ground' for a conviction instead of finding the defendant not guilty." The State notes – correctly – that both the Missouri Supreme Court and this Court have repeatedly held that defense counsel may reasonably pursue an "all-or-nothing" strategy at trial, and ask the jury to acquit the defendant of the

offense charged by the State, rather than submitting a lesser-included-offense instruction which may increase the defendant's chances of conviction (albeit of a lesser crime). *See*, *e.g.*, *Watson v. State*, 520 S.W.3d 423, 436-37 (Mo. 2017); *Love v. State*, 670 S.W.2d 499, 502 (Mo. 1984); *King v. State*, 638 S.W.3d 113, 118 (Mo. App. W.D. 2022); *Yaeger v. State*, 542 S.W.3d 433, 436-37 (Mo. App. S.D. 2018).

While Missouri courts have refused to second-guess a trial attorney's considered decision to pursue an "all-or-nothing" defense, the circuit court did not clearly err in finding that counsel had not pursued such a strategy *in this case*. Counsel acknowledged at the evidentiary hearing that the *only* contested issue in the case was Flaherty's state of mind at the time of the gun's discharge. Moreover, counsel actually requested a lesser-included-offense instruction, which gave the jury the option of finding that Flaherty had acted *recklessly* in causing his wife's injuries. By doing so, counsel gave the jury the option of convicting Flaherty *even if* the jury rejected the State's claim that he had intentionally injured his wife.

Further, in her closing argument, defense counsel never asked the jury to acquit Flaherty. Instead, counsel asked the jury only to reject the State's contention that Flaherty had *intentionally* shot his wife. At the conclusion of her closing, counsel admitted to the jury that Flaherty had been "incredibly irresponsible," and had exercised "extremely poor judgment." While counsel argued that the jury should not convict Flaherty of *first-degree* domestic assault, counsel expressed agnosticism as to the lesser-included offense of *second-degree* domestic assault – plainly inviting jurors to convict him of that offense instead:

[Flaherty's daughter] is arguably the State's – the best witness to tell us what happened.  She was literally right there, literally with her hand on the barrel, literally getting her hand burned by the barrel when it goes off.  She's the best witness to tell us what happened.

She says, "My dad wasn't aiming the gun at my mom."  That right there, that has to put reasonable doubt in your mind that he did this intentionally.

I want you all – I want you all to look at your jury instructions very quickly and flip to Instruction No. 8 [the instruction on *second-degree domestic assault*].  When you go back to your deliberation room and talk, you may – you may decide amongst yourselves, you know, "I don't think the State has firmly convinced me that Shawn intentionally pulled that trigger to purposely cause [his wife] harm, but I do think there's evidence that Shawn acted recklessly."  You have the option to find for the second degree domestic assault.  You do have that option.

And I'm not telling you – I'm not making argument on that.  I'm not telling you what to do on that.  I'm putting it in your hands.  Okay?  Again, ask yourself – ask yourself, "Am I firmly convinced of his intent or do I have reasonable doubt?"

. . . .

. . . I'm going to leave Shawn in your hands now.  And I'll just end with that I ask you – please ask you to strongly consider the evidence and to find Shawn not guilty of intentionally shooting [his wife].

Thus, the record is clear that trial counsel did *not* pursue an "all-or-nothing" defense.  Instead, counsel only asked the jury to reject the claim that Flaherty had *intentionally* shot his wife.  Counsel acknowledged that Flaherty was "incredibly irresponsible" and "had extremely poor judgment," and she invited jurors to find that he had acted from a culpable level of carelessness. What counsel did *not* do, however, was give the jury the option of deciding *how*

13

*careless* Flaherty had been – had he acted recklessly, or merely with criminal negligence?

There are significant practical differences between a conviction of second-*versus* fourth-degree domestic assault. Second-degree domestic assault is a class D felony, § 565.073.2, subjecting Flaherty to a term of imprisonment of up to seven years. § 558.011.1(4). In contrast, fourth-degree domestic assault is a class A misdemeanor, § 565.076.2, with a maximum term of imprisonment of one year. § 558.011.1(6). Moreover, as the circuit court recognized, because it is a misdemeanor, conviction of fourth-degree domestic assault would have prevented the jury from separately convicting Flaherty of armed criminal action. *See* § 571.015.1 (defining "armed criminal action" as the use of a dangerous instrument or deadly weapon by a person "*who commits any felony* under the laws of this state . . ." (emphasis added)); *State v. Pitiya*, 623 S.W.3d 217, 223 (Mo. App. W.D. 2021) (reversing conviction of armed criminal action, where the Court separately concluded that the predicate offense "was only a misdemeanor").

In addition, the evidence also raises legitimate questions concerning whether an individual like Flaherty would have actually been aware of the substantial risks that were presented by his actions, and therefore whether he acted recklessly, or instead with criminal negligence. Flaherty and his daughter were struggling over the gun, and both had their hands on it, at the moment it discharged. The evidence is unclear whether Flaherty was aiming at his wife. The evidence is also unclear as to whether Flaherty intentionally pulled the gun's trigger, or instead whether the trigger was moved by the pushing and pulling of

14

the ongoing struggle. According to Flaherty's firearms expert, Flaherty may not have even been aware that his finger was on the gun's trigger, and the gun's hammer may have been cocked unintentionally by his daughter as she reached to grab Flaherty's wrist. As the expert explained, the light trigger pressure and short trigger travel required to fire the gun were highly unusual, and highly dangerous. In these circumstances, a jury could reasonably find either that Flaherty consciously disregarded the risks presented by his conduct (and therefore acted recklessly), or that he was ignorant of those risks (and therefore criminally negligent).

It is also significant that there is only a fine distinction between a finding that an offender acted recklessly, *versus* a finding that they acted with criminal negligence. In both cases, the jury must find that the offender acted in the face of "a substantial and unjustifiable risk" of injury to the victim. *Compare* § 562.016.4 and § 556.061(42) (defining recklessness), *with* § 562.016.5 and § 556.061(16) (defining criminal negligence). The distinction between the two states of mind relates to whether the offender "consciously disregard[ed]" that risk, or instead whether the offender acted unreasonably in "fail[ing] to be aware" of it. *Id*. The Missouri Supreme Court has recognized that "[d]irect proof of the required mental state is seldom available, and such intent is usually inferred from circumstantial evidence." *State v. Letica*, 356 S.W.3d 157, 166 (Mo. 2011) (citation omitted); *see also*, *e.g.*, *State v. Umfleet*, 621 S.W.3d 15, 23 (Mo. App. E.D. 2021) (quoting *State v. Lee*, 332 S.W.3d 267, 270 (Mo. App. E.D. 2011)). Given the subtle distinctions between recklessness and criminal negligence, and the fact that jurors would have been required to choose between them based on

reasonable, competing inferences, the circuit court did not clearly err in concluding that competent counsel would have given the jury the choice between the two mental states.

In the circuit court, the State stressed an additional distinction between second- and fourth-degree domestic assault, beyond the different mental states: that second-degree domestic assault, as submitted, required the jury to find that Flaherty had caused "serious physical injury" to his wife, while fourth-degree domestic assault merely required it to find that Flaherty caused her "physical injury." The State emphasized that trial counsel had admitted that she was not contesting that Flaherty's wife had suffered "serious physical injury" as the term is defined in § 556.061(44). The State argued to the circuit court that "it would have cast a big credibility issue on the defense" to argue, in connection with the submission of fourth-degree domestic assault, that Flaherty's wife had suffered only "physical injury."

The differing levels of injury required to convict of second- *versus* fourth-degree domestic assault may have been a circumstance the circuit court was entitled to consider in determining whether trial counsel had a strategic reason for failing to request an instruction on domestic assault in the fourth degree. The circuit court apparently concluded, however, that in light of the other circumstances discussed above, the different levels of injury required to convict of the two offenses did not justify trial counsel's actions. And notably, on appeal the State does not renew the argument that counsel's failure to request a fourth-degree domestic assault submission is justified by the lower level of injury necessary to convict of that offense.

16

We emphasize that the determination whether counsel acted competently is a fact-intensive inquiry, which must consider the totality of the circumstances involved in a particular case. A circuit court is not required to find trial counsel incompetent merely because counsel requested *one* lesser-included offense instruction, but not another – even where the jury convicts of the lesser-included offense. Whether we would have come to the same conclusion as an initial matter, we cannot find that the circuit court clearly erred in finding that Flaherty's counsel had performed inadequately when she failed to request an instruction on fourth-degree domestic assault.

## II.

We turn now to Flaherty's contention that the circuit court clearly erred by finding that he had not been prejudiced by counsel's failure to request a fourth-degree domestic assault instruction. In finding that Flaherty had failed to prove prejudice, the circuit court gave dispositive weight to the fact that the jury had convicted him of the greater offense of domestic assault in the second degree. The circuit court reasoned that it would have to find that the jury acted lawlessly in convicting Flaherty of second-degree domestic assault, in order to find that an instruction on fourth-degree domestic assault might have changed the outcome.

In *Hendrix v. State*, 369 S.W.3d 93 (Mo. App. W.D. 2012), this Court adopted the rationale applied by the circuit court in this case. We held that a post-conviction relief movant could not show prejudice from counsel's failure to request lesser-included-offense instructions for second- and third-degree assault, where the jury had convicted the movant of the greater offense of first-degree assault. Like the circuit court's judgment, we reasoned that,

> [t]o claim he suffered prejudice, Hendrix must necessarily argue that the jury's conviction was erroneous in that it would have convicted him of a lesser offense had it been given the instruction. "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on the grounds of evidentiary insufficiency, that the . . . jury acted according to law." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Prejudice is determined with the underlying assumption that the jury "reasonably, conscientiously, and impartially" applied the law. *Id.* Under the *Strickland* decision, we must find that the jury followed the law in reaching its decision to find Hendrix guilty of assault in the first degree. Thus, no prejudice can be established.

*Id.* at 100.

While *Hendrix* would support the circuit court's conclusion that Flaherty could not prove prejudice in this case, the Missouri Supreme Court expressly rejected that aspect of the *Hendrix* decision in *McNeal v. State*, 412 S.W.3d 886 (Mo. 2013). *McNeal* observed "[t]he assumption underlying . . . the holding in *Hendrix* is that it is illogical to conclude that the jury's deliberative process would be impacted in any way if a lesser-included offense instruction were provided." *Id.* at 892. The Court then declared: "[t]his assumption is incorrect." *Id.* The Court explained:

> the failure to provide the jury with the option of a lesser-included offense deprives the defendant of a fair trial, even if the jury ultimately convicts the defendant of the greater offense. Without a trespass instruction, the jury was left with only two choices: conviction of burglary or acquittal. When "one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction." Even though juries are obligated "as a theoretical matter" to acquit a defendant if they do not find every element of the offense beyond a reasonable doubt, there is a "substantial risk that the jury's practice will diverge from theory" when it is not presented with the option of convicting of a lesser offense instead of acquittal. Therefore, under the facts of this case, the jury's decision to convict

on a greater offense does not foreclose all possibility that the jury would have convicted the defendant of the lesser offense. The jury's decision may make it difficult for a post-conviction movant to prove prejudice, but it does not necessarily preclude a finding of prejudice as a matter of law . . . .

412 S.W.3d at 892 (citations omitted). The Supreme Court quoted and reaffirmed this rationale in *Watson v. State*, 520 S.W.3d 423, 437 (Mo. 2017).[2]

In Missouri, there is an additional reason to hold that conviction of a greater offense does not prevent a finding that a defendant was prejudiced by failure to submit a lesser-included offense: Missouri is not an "acquittal-first" jurisdiction. Unlike in other States,

"Missouri juries do not have to find a defendant 'not guilty' of the greater offense . . . before considering the lesser included offense . . . ." "Instead, . . . Missouri juries are allowed to consider the lesser included offense if they 'do not find the defendant guilty' of the greater offense." "The difference in terminology carries meaning." In Missouri, "a jury deadlocked on the greater offense has not found the defendant guilty on the greater charge, [and] thus can consider the lesser included offense."

*State v. Rainey*, 545 S.W.3d 916, 922 n.7 (Mo. App. W.D. 2018) (citations omitted); *see also*, *e.g.*, *Tisius v. State*, 183 S.W.3d 207, 217 (Mo. 2006); *State v. Johnson*, 599 S.W.3d 222, 226 (Mo. App. W.D. 2020).

---

[2] The prejudice analysis may be different in cases in which a jury convicts of a *greater* offense, despite being given an instruction on at least one lesser offense. *See State v. Smith*, 522 S.W.3d 221, 226-28 & n.7 (Mo. 2017) (recognizing that prejudice may not exist in such circumstances *if* the lesser-offense instruction which was submitted "tested" the same element as the omitted lesser-offense instruction, and the jury nevertheless convicted of the greater offense); *State v. Jensen*, 524 S.W.3d 33, 38-40 (Mo. 2017) (same). In this case, of course, the jury convicted Flaherty of the lowest degree of domestic assault, involving the "lowest" mental state, which was submitted to it.

Thus, under Missouri law, a jury would not be required to *acquit* Flaherty of second-degree domestic assault in order to instead convict him of fourth-degree domestic assault. *Rainey*, 545 S.W.3d at 922 n.7 ("a jury's rejection of a greater offense in favor of a lesser-included offense does not constitute an acquittal, or a 'not guilty' verdict, of the greater offense"). Therefore, the fact that a jury convicted Flaherty of second-degree domestic assault in a previous trial does not foreclose the possibility that jurors would have convicted him of a lesser offense if they had been given that option. The fact that Missouri is not an "acquittal-first" jurisdiction provides additional support for the holding of *McNeal* and *Watson*. *Cf. Sanders v. State*, 946 So.2d 953, 959 (Fla. 2006) (holding that a defendant convicted of a greater offense cannot prove *Strickland* prejudice resulting from counsel's failure to request a lesser-included-offense instruction, where Florida law "allows the jury to consider a lesser-included offense *only* if it 'decide[s] that the main accusation has not been proved beyond a reasonable doubt'" (citation omitted)).

Thus, we conclude that the circuit court clearly erred when it held that Flaherty could not establish prejudice in this case because the jury had convicted him of second-degree domestic assault. We further conclude that the record in this case establishes that Flaherty was prejudiced by counsel's incompetence, entitling him to a new trial. In *McNeal*, the Supreme Court quoted, and adopted, the analysis of prejudice applied by this Court in *Patterson v. State*, 110 S.W.3d 896 (Mo. App. W.D. 2003). *See McNeal*, 412 S.W.3d at 892-93. In *Patterson*, the movant had been charged with second-degree robbery, which required the jury to find that he "forcibly" stole another person's property. 110 S.W.3d at 901.

20

This Court reversed the circuit court's denial of post-conviction relief, and found that movant's trial counsel had been ineffective for failing to tender a properly-drafted instruction on the lesser-included offense of stealing, which would have eliminated the requirement of a "forcible" taking.

Although the jury had actually convicted the movant of second-degree robbery, *Patterson* held that the movant was prejudiced by the lack of a stealing instruction. In reaching this conclusion, we emphasized that the evidence on the differential element – the threat of the use of force – was "not overwhelming." We explained that, although a reasonable juror could find that the movant threatened to use force, "[t]he evidence would also support a finding" that no threat of force was intended.

> Contrary to the State's argument, . . . there is a reasonable probability that the results of the proceedings would have been different if trial counsel had submitted a properly drafted lesser-included offense instruction. This is because the evidence of either an explicit or an implicit threat of physical force in the stealing was not overwhelming. . . . Although a reasonable person could believe from this evidence that he had his hand in his pocket intending that the victims think he had a weapon, his intent is a question of fact for the jury to determine. The evidence would also support a finding by the jury to find that he did not intend for the victims to believe he had a weapon. . . .

> Therefore, because the evidence of the threat of physical harm was not overwhelming, a reasonable probability exists that a juror might have determined that there was no threat, either explicit or implicit, of physical force in the stealing. As such, there exists a reasonable probability, sufficient to undermine the confidence in the outcome, that the result of the trial would have been different if trial counsel had submitted a proper lesser-included offense instruction for felony stealing. Mr. Patterson has established that he was prejudiced by his trial counsel's submission of a defective lesser-

21

included offense instruction, and the motion court clearly erred in finding Mr. Patterson's trial counsel was not ineffective.

*Id.* at 906-07. *McNeal* itself observed that, in *Patterson*, "[t]he court reversed the conviction and sentence and remanded for a new trial *because the evidence of guilt was not overwhelming . . . .*" 412 S.W.3d at 893 (emphasis added).

As in *Patterson*, the evidence that Flaherty consciously disregarded a substantial risk to his wife, and thereby acted "recklessly," was not overwhelming. While there was evidence which would support a finding of recklessness, "[t]he evidence would also support a finding" that Flaherty acted merely with criminal negligence, meaning that he was unreasonably oblivious to the substantial risks his conduct created. In these circumstances, where the degree of Flaherty's carelessness was a debatable factual question, counsel's unreasonable failure to request a lesser-included-offense instruction undermines this Court's confidence in the outcome of Flaherty's trial, and presents a reasonable probability of a different outcome if the omitted instruction had in fact been given.

This result is confirmed by *Watson*. In that case, the Supreme Court stated that a movant was entitled to an evidentiary hearing because he had "alleged facts, not clearly refuted by the record, demonstrating he was prejudiced by trial counsel's failure to request lesser-included offense instructions in that there was *a reasonable basis in the evidence* for acquitting him of first-degree robbery and convicting him of second-degree robbery." 520 S.W.3d at 438 (emphasis added). In this case, as we have explained above, there plainly was "a reasonable basis in the evidence" for the jury to have convicted Flaherty of fourth-degree domestic assault, rather than second-degree domestic assault.

22

## Conclusion

Because the record in this case establishes that Flaherty was prejudiced by the deficient performance of his trial counsel, the circuit court's denial of post-conviction relief is reversed. Pursuant to Rule 84.14, we "give such judgment as the [circuit] court ought to [have] give[n]," and vacate Flaherty's convictions and order a new trial.

_____
**Alok Ahuja, Judge**

All concur.